Rex C. PARNELL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13370.

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1964.

Robert B. Ardis, Daniel S. Buford, Tulsa, for plaintiff in error.

**372**

Charles Nesbitt, Atty. Gen., Hugh Collum, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge:

Plaintiff in Error, Rex Parnell, was charged by information in District Court Case #19773, with Robbery By Fear, as defined by Title 21 § 791, O.S.A.

To this information the defendant entered a plea of not guilty and was tried by a jury on the 3rd day of December, 1962, who found him guilty and fixed his punishment at Five (5) Years in the State Penitentiary at McAlester, Oklahoma.

A timely appeal was perfected in this Court; in substance, the record discloses the following material facts:

On the 28th day of April, 1962, Rex Parnell, accompanied by Floyd Kritser and Bill Kritser, went to the home of the prosecuting witness, Mrs. Cora McDonald, an 84 year old woman, living at 609 South Atlanta, Tulsa, Oklahoma. After conversation with Mrs. McDonald, and her brother, Mr. Wimberly, a retired banker, residing in Independence, Missouri, Parnell and his companions agreed to do certain repair work in the attic of the home, for the sum of $25.00, but being unable to secure the necessary materials to make said repairs, they returned the following Monday, the 30th day of April, 1962. At this time Mrs. McDonald was alone; two of them worked in the attic and the third man remained in the dining room during the approximate two hour period of time which it took to complete the repair work in the attic; and using in said repair work, lumber and material of the reasonable value of $12.00. After having completed the work in the attic, Parnell presented a bill in the sum of $600.00. What occurred at this point may best be summarized in the language of the prosecuting witness:

DIRECT EXAMINATION: CORA McDONALD by MR. JACKMAN.

" * * *

"A. Mr. Parnell came in and sat down and told me what my bill was.

"Q. Okay. Now, who else was there?

"A. Kritser was still sitting there.

"Q. Still sitting in the rocking chair?

"A. In the rocking chair.

"Q. What did Mr. Parnell say to you, Mrs. McDonald?

"A. He said, 'Your bill is $600.00.' I said, 'Oh no. It couldn't be $600.-00.' I don't—now, I'm not sure that I said, 'You said it would be $25.00'. I don't know that I said that. I said, 'It couldn't be.' 'Yes, it's $600.00.' I said, 'I don't have that much.' 'Well, what do you have?'

"Q. What did he say?

"A. 'What do you have? What can you pay?'

"Q. So what did you do then?

"A. I went and got the $300.00 and handed it to him and he counted it.

" * * *

"Q. Okay, why did you pay them the $300.00, Mrs. McDonald?

"A. Why did I?

"Q. Yes, Ma'am.

"A. I wish you'd tell me that. I was just so frightened that I didn't know what to do. One of them was on one side of me and one on the other and between me and the door. I've read of cases like that and—

"THE COURT: Wait, Wait, don't tell that—

"MR. JACKMAN: That is all right. I have no further questions, your Honor. (Casemade pages 38 & 39)"

CROSS EXAMINATION: BY MR. ARDIS:

" * * *

"Q. And after they finished the work they, who was it that came to you and said that he was through, that they were through?

"A. Mr. Parnell came in.

"Q. Now—

"A. Sat down and said what my bill was.

"Q. Okay. Did Mr. Parnell ever say anything to you that was impolite?

"A. No.

"Q. Was he polite to you?

"A. Yes he was.

"Q. Did even the boy that sat in the rocking chair, one of the brothers that sat in the rocking chair, was he polite to you?

"A. Yes.

"Q. And did he make conversation about various things, about things that you had done, etc.

"A. Yes.

"Q. And were they in any way impolite to you at all?

"A. No. The only time there was a rough note sounded at all was Mr. Parnell, when I gave him the $300.00, said 'I'm still stuck for $63.00 for material.' I don't know why he said $63.00, but that's what he said, and a little—just like that. 'I'm still stuck.'

"Q. Well, did he in any way lay a hand on you at that time?

"A. No he didn't.

"Q. Did he in any way say, 'You pay me this money or else'?

"A. No.

"Q. Well what were you afraid of?

"A. He said, 'When—when can you pay the rest of this?' He did say that. 'When can you pay the rest of this?'

"Q. All right. Now, what did you tell him?

"A. I said, 'I don't have any money.' Then I said— * * * 'Well, maybe I can go to this little store over here and cash a check.' Knowing that when he got away I'd call the police, and I did. I called the police.

"Q. But you first paid him some money?

"A. Yes. I paid him $300.00.

"Q. And let me ask you this, why didn't you call the police before you paid him the $300.00?

"A. You tell me. I was frightened.

"Q. From what, Mrs. McDonald?

"A. *Well, I was shocked at such a— at such a thing, asking $600.00 for a job that they had promised to do for $25.00.*

"Q. Okay, now, you were shocked?

"A. Yes, and frightened.

"Q. But you were not afraid; is that right?

"A. *Yes, I was afraid. I was afraid of those two men.*

"Q. Now, in what way had they hindered you or bothered you?

"A. *They asked $600.00 for a job that they promised to do for $25.00 and I knew that meant something bad, they were planning something bad, or they wouldn't have done such a thing as that.* (Casemade pages 43 to 45—Emphasis ours)

" * * *

"Q. But these two boys that were in the room and this defendant did not in any way lay a hand on you?

"A. No.

"Q. Is that right?

"A. Yes

"Q. Did they in any way yell at you or threaten you?

"A. No.

"Q. Did they in any way prevent you from going to the outside?

"A. Only by fear. I was afraid.

"Q. Answer the question please, did they prevent you from going to the outside?

"A. No.

" * * * (Casemade, page 49)"

Mrs. Nellie Voelkle, a neighbor, testified that she observed the prosecuting witness a short time after the defendant and his companions had obtained the $300.00 and left the premises and that the prosecuting witness appeared to be frightened.

The defendant, Rex Parnell testified that the work performed was performed in accordance with a contract for repairs, signed by Mrs. Cora McDonald, and introduced into evidence; the contract allegedly signed by her. She denied ever having executed said contract, on rebuttal, or ever having agreed to pay the sum of $600.00, prior to the commencement of the work.

Under the facts as above outlined it is defendant's principal contention that the evidence was wholly insufficient to support the verdict of the jury, for the reason that the State failed to introduce evidence, tending in any degree, to establish that the defendant or his companions, by word, act or menacing gesture, coerced or intimidated the prosecuting witness, and created in her mind a reasonable apprehension or fear of injury to her person or property either immediate or future.

At the outset we observe that the question here presented is not whether the defendant and his companions might have been successfully prosecuted under some other provision of the Penal Code, but we address ourselves only to the question of whether, under the record, the evidence is sufficient to support the verdict of the Jury.

Title 21 § 791, O.S.A., provided:

"Robbery is a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

Title 21 § 792, O.S.A., provides:

"To constitute robbery, the force or fear must be employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking. If employed merely

as a means of escape, it does not constitute robbery."

Title 21 § 794, O.S.A., provides:

"The fear which constitutes robbery may be either:

"1. The fear of an unlawful injury, immediate or future, to the person or property of the person robbed or of any relative of his, or member of his. family; or,

"2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed, at the time of the robbery."

While we believe that Mrs. Cora McDonald was in a state of shock and fear after the accused, Rex Parnell, made demand upon her for the sum of $600.00 (a sum grossly in excess of the sum agreed upon), we do not believe that the mere request of a larger amount than was actually due defendant, unaccompanied by some act, gesture, deed or word, threatening unlawful injury, either to the person of Mrs. Cora McDonald or her property, is sufficient to constitute that degree of coercion or intimidation required under our statutes. For as was stated in Davis v. Commonwealth, Ky., 54 S.W. 959; Syllabus. #1:

"Where a person parts with money upon a mere demand made in a rough, positive voice, with an oath, the taking is not robbery; the menace not being such as to excite reasonable apprehension of danger."

In construing statutes similar to our own, the Supreme Court of Illinois, in Syllabus #2, Steward v. People, 224 Ill. 434, 79 N.E. 636, stated the rule which we will follow here:

"To constitute the crime of robbery there must be violence or intimidation of such a character as that the injured party is put in fear of such a nature as in reason and common experience is likely to induce a person to part with his property against his will, and tem-

porarily suspend the power of exercising his will."

It can thus be seen that some act, word, gesture or deed calculated to produce fear or injury to property or person must be established by competent evidence. And it must further appear that as a result of said act, word, gesture or deed the victim was in such a state of fear that he parted with his property.

For as was stated in United States v. Baker, D.C., 129 F.Supp. 684:

"Intimidation in the law of robbery means putting in fear, and the fear must arise from the conduct of the accused rather than the mere temperamental timidity of the victim. The fear need not be so great as to result in great terror, panic, or hysteria."

Under the facts here presented, in view of the authorities above cited we are of the opinion that the evidence was wholly insufficient to support the verdict of the Jury and accordingly reverse and remand this cause, with instructions to dismiss.

Reversed and remanded.

JOHNSON, P. J., and NIX, J., concur.