Submitted on remand from the Oregon Supreme Court May 5, affirmed December 9, 1992, reconsideration denied April 14, petition for review denied May 25, 1993 (316 Or 529)

## STATE OF OREGON,
*Respondent,*

*v.*

## DONALD GONZALES ODOMS,
*Appellant.*

## (C88-10-36961; CA A60041)

844 P2d 217

Howard Clyman, West Linn, for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Ann Kelley, Assistant Attorney General, Salem, for respondent.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Rossman, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant was convicted by a jury of kidnapping in the first degree, ORS 163.235, rape in the first degree, ORS 163.375, sodomy in the first degree, ORS 163.405, compelling prostitution, ORS 167.017, promoting prostitution, ORS 167.012, robbery in the third degree, ORS 164.395, operating a motor vehicle while revoked under an habitual offender order, *former* ORS 811.185 (*repealed by* Or Laws 1991, ch 208, § 1), and felony driving while revoked, ORS 811.175. Some of his assignments of error were decided in *State v. Odoms*, 104 Or App 658, 803 P2d 739 (1990), *aff'd in part and rev'd in part* 313 Or 76, 829 P2d 690 (1992). Now, on remand from the Supreme Court, we consider the remaining assignments.

■ Defendant assigns error to the trial court's denial of his motions for judgment of acquittal on the kidnapping, rape, sodomy and robbery charges.[1] We view the record in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of each crime beyond a reasonable doubt. *State v. Walton*, 311 Or 223, 241-42, 809 P2d 81 (1991).

> "It is not proper for us to hold that there is a reasonable doubt because of conflicts in the evidence. After a verdict of guilty, such conflicts must be treated as if they had been decided in the state's favor. After the conflicts have been so decided, we must take such decided facts together with those facts about which there is no conflict and determine whether the inferences that may be drawn from them are sufficient to allow the jury to find defendant's guilt beyond a reasonable doubt. Our decision is not whether we believe defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury so to find. *State v. Krummacher*, 269 Or 125, 137-38, 523 P2d 1009 (1974)." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989).

The charges arose from events that occurred over a period of three or four days in September, 1988. Early in the morning of September 24 or 25, the complaining witness, Kidwell, was kicked out of the house where she had been staying. She went to a restaurant to make a phone call. She

---

[1] Defendant's assignments of error regarding the other crimes have been resolved in the previous opinions of the Supreme Court and this court.

did not make the call from there, however, because "there was like a lot of people there * * * [a]nd they were all just talking about pimp stuff," and she was "paranoid." While there, she was accosted in her car by a pimp. Defendant and another man offered to help her to get the pimp to leave her alone. She accepted their help. After that, the people in the area began "talking gross" to her. She ultimately left with defendant in his car. The record reflects that, when asked why she went with him, she replied:

> "I don't know. Stupid, I guess. * * * [The people hanging out there were] talking to me crazy. That's — they just do that. They just talk to you like that. And I was already scared of that other man. I didn't know what to do. There was a lot of people there. * * * I was there all by myself and I didn't know what to do."

Defendant and Kidwell then drove around in defendant's car until morning. When they returned to the restaurant, a window in Kidwell's car had been broken, and all of her belongings were missing. Defendant then took her to an apartment where some of his friends lived. That night, defendant instructed Kidwell about how to be a prostitute. The next day the two argued about Kidwell becoming a prostitute, and Kidwell tried to persuade defendant that she could do something else for him, such as sell drugs. When asked why she did not simply leave, she testified, "I was scared to."

Over the next two or three days, Kidwell had sexual intercourse with defendant, engaged in sodomy with him, worked as a prostitute for him and signed a paper that defendant used to sell her car. He kept the money for himself. During those days, defendant hit Kidwell on at least one occasion, because she had not brought him enough money. When asked whether that money was for committing sex acts with people, she testified, "Yeah. I had to do it or else — I had to."

At some point during the three days, defendant drove Kidwell from Portland to Salem so that she could pick up some clothes at her sister's house. She testified that she did not use that opportunity to escape from defendant, because she feared that he might hurt her sister or her nephew. On September 28, Kidwell was picked up by police. Her face was bruised. She told them what had happened.

Defendant argues that the state failed to prove that he took Kidwell from one place to another without her consent, because the record contains no evidence that he forced, threatened or deceived her.[2] Although there is no evidence that defendant used physical force when Kidwell first left the restaurant with him, there is evidence from which the jury could infer that he used threats or deception to induce her to go with him from one place to another on at least one occasion. *See, e.g., State v. Amell*, 303 Or 355, 736 P2d 561 (1987). He also argues that there is no evidence that his purpose was to cause physical injury or to terrorize Kidwell. The evidence supports an inference that his purpose was, at a minimum, to compel her into prostitution. That is enough.[3] *See State v. Caldwell*, 98 Or App 708, 780 P2d 789 (1989); *State v. Strickland*, 36 Or App 119, 584 P2d 310 (1978). The trial court properly denied the motion for judgment of acquittal on the kidnapping charge.

Defendant's assignments regarding rape, sodomy and robbery are all similarly based on an apparent, but mistaken, belief that the evidence had to show that some specific act of violence was associated with each event. "Forcible compulsion," as used in ORS 163.375(1)(a) and ORS 163.405(1)(a), includes "a threat, *express or implied*, that places a person in fear of immediate or future death or physical injury to self or another person." ORS 163.305(2). (Emphasis supplied.) Similarly, to satisfy that element of robbery in the third degree, the state must prove only that a defendant used or threatened to use physical force. ORS 164.395. The record contains evidence from which a rational jury could infer that defendant threatened, expressly or impliedly, to use physical force against Kidwell on each of the

---

[2] ORS 163.215(1) provides:

" 'Without consent' means that the taking or confinement is accomplished by force, threat or deception, or, in the case of a person under 16 years of age or who is otherwise incapable of giving consent, that the taking or confinement is accomplished without the consent of the lawful custodian of the person."

[3] ORS 167.017(1) provides, in relevant part:

"A person commits the crime of compelling prostitution if the person knowingly:

"(a) Uses force or intimidation to compel another to engage in prostitution."

occasions for which a crime was charged. The trial court did not err.

■ Defendant assigns error to the trial court's decision to sentence him as a dangerous offender[4] and to impose consecutive dangerous offender sentences. There is no reason why a court cannot impose consecutive dangerous offender sentences, *State v. Piazza*, 41 Or App 465, 602 P2d 280, *rev den* 288 Or 141 (1979), but his other argument merits discussion.

■ Before it can impose a dangerous offender sentence, the court must first

> "declare that [it] has reason to believe that because of the dangerousness of the defendant an extended period of confinement is required for the protection of the public and make appropriate findings on the record to justify that belief." *State v. Huntley*, 302 Or 418, 437, 730 P2d 1234 (1986).

It must also find that

> "the defendant is being sentenced for a Class A felony or a felony that seriously endangered the life or safety of another and has been previously convicted of a felony not related to the instant crime as a single criminal episode." 302 Or at 437.

Then the judge must order a presentence report and psychiatric examination and hold a presentence hearing (unless the defendant waives that right) to consider the presentence and examination reports and the evidence in the case or the evidence presented at the presentence hearing. ORS 161.735 (6); *State v. Huntley, supra.* The court then must find whether

---

[4] ORS 161.725 (*since amended by* Or Laws 1989, ch 790, § 75) provided, in part:

"The maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exist:

"(1) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"(2) The defendant is being sentenced for a felony that seriously endangered the life or safety of another, has been previously convicted of a felony not related to the instant crime as a single criminal episode, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity."

"(1) the defendant is dangerous, (2) because of the dangerousness of the defendant an extended period of confinement is required for the protection of the public, and (3) the defendant is suffering from a severe personality disorder indicating a propensity toward criminal activity." 302 Or at 437.

The trial court made those findings, but defendant argues that they were not supported by the record, because the state's expert had not evaluated him personally since 1980. The expert's opinion was based in part on his conclusion that defendant had been convicted of assaults before, on police reports that included lies that Kidwell had told police about defendant's use of weapons and in part on the conclusion that he was not a responsible parent. Defendant argues that the expert's diagnosis was therefore inadequate and that the evidence at trial did not support a finding of dangerousness.

■ ■ Although the sentencing court must consider the report, it is not bound by the expert's evaluation. *State v. Huntley, supra,* 302 Or at 435. Even if all the report discloses is that the defendant was uncooperative and that a psychiatric analysis could not be made, that does not render the report insufficient for purposes of ORS 161.735. *State v. Pryor,* 96 Or App 181, 772 P2d 431, *rev den* 308 Or 158 (1989).

The trial judge said at the sentencing hearing:

"In my opinion, you're an extremely dangerous offender, you're a vicious predator, you exploit women, you don't have any remorse for the behavior, you don't have any sense of guilt, you don't have any concern about the dignity of other human beings, you're a danger to any susceptible woman in this community, and you clearly are a dangerous offender. You suffer from — in the Court's opinion, I'll find beyond a reasonable doubt that you suffer a personality disorder that indicates a likelihood and propensity toward future criminal activity of a dangerous nature. And there's no way that you should be released from custody."

In its judgment, the trial court found:

"[T]he defendant is a Dangerous Offender suffering from a severe personality disorder indicating a propensity toward criminal activity, and that because of the dangerousness of

the defendant an extended period of incarceration is required for the protection of the public * * *."

Those findings, taken together, are sufficient to support the conclusion that defendant is a dangerous offender.

Defendant's last assignment of error asserts three things that he thinks should have led the trial court to grant a mistrial. No mistrial motion was made about two of those, and they are not preserved for review. The third has no merit.

Affirmed.