Argued and submitted April 27, reversed and remanded June 28, petition for review allowed October 31, 1995 (322 Or 228)

STATE OF OREGON,
*Appellant,*

*v.*

FAITH ERIN CHAKERIAN,
*Respondent.*

(C93-07-34971; CA A83155 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

HANS MICHAEL VON MOHN,
*Respondent.*

(C93-07-34975; CA A83173)

STATE OF OREGON,
*Appellant,*

*v.*

COLLIN NYLE BEGGS,
*Respondent.*

(C93-07-34970; CA A83174)

STATE OF OREGON,
*Appellant,*

*v.*

MARK S. GOSNELL,
*Respondent.*

(C93-07-34972; CA A83175)

STATE OF OREGON,
*Appellant,*

*v.*

ROBERT PETER McDONALD, JR.,
*Respondent.*

(C93-07-34973; CA A83176)
(Cases Consolidated)

900 P2d 511

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Jesse Wm. Barton, Deputy Public Defender, argued the cause for respondents Hans Michael Von Mohn, Mark S. Gosnell and Robert Peter McDonald, Jr. With him on the brief was Sally L. Avera, Public Defender.

No appearance for respondents Erin Faith Chakerian and Collin Nyle Beggs.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

The state appeals, seeking reversal of orders that allowed defendants' demurrers to charges of riot. The trial court concluded that the statute underlying those charges, ORS 166.015, is unconstitutionally overbroad. We reverse and remand.

Defendants were charged, in a single indictment, with violating the anti-rioting statute, ORS 166.015. They demurred, asserting, *inter alia*, that (1) ORS 166.015 is unconstitutional in that it is directed to the content of expression and does not fall within any historically recognized exception to the free speech protections of Article I, section 8, of the Oregon Constitution;[1] (2) ORS 166.015 is overbroad in that it criminalizes expression protected under Article I, section 8; and (3) ORS 166.015 is unconstitutionally vague. The trial court rejected defendants' arguments that the statute is content-driven and unconstitutionally vague, but ultimately allowed their demurrers on the ground that ORS 166.015 is overbroad.

The state appeals those orders, ORS 138.060(1), and argues that ORS 166.015 is not susceptible to facial overbreadth challenges, by way of demurrer, based on Article I, section 8. Defendants cross-assign error to the court's rejection of their alternative grounds for demurrer.

ORS 166.015 provides:

"(1)   A person commits the crime of riot if while participating with five or more other persons the person engages in tumultuous and violent conduct and thereby intentionally or recklessly creates a grave risk of causing public alarm.

"(2)   Riot is a Class C felony."

In reviewing the trial court's determination that that statute is unconstitutionally overbroad, we employ the

---

[1] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Defendants also demurred on federal constitutional grounds. However, the parties appear to agree, albeit for different reasons, that the free speech protections extended by the United States Constitution are not at issue in this appeal. Consequently, we confine our analysis to the Oregon Constitution.

analysis described in *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). In *City of Eugene v. Miller*, 318 Or 480, 871 P2d 454 (1994), the court summarized *Robertson's* taxonomy of three types of statutes implicating expression:

> "The first *Robertson* category consists of laws that 'focus on the *content* of speech or writing' or are ' '"written in terms directed to the substance of any 'opinion' or any 'subject' of communication." ' Laws within that category violate Article I, section 8, 'unless the scope of the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach.' The second *Robertson* category consists of laws that 'focus[] on forbidden effects, but expressly prohibit[] expression used to achieve those effects.' Laws in that category 'are analyzed for overbreadth.' Finally, the third *Robertson* category consists of laws that 'focus[] on forbidden effects, but without referring to expression at all.' Laws within the third category are analyzed to determine whether they violate Article I, section 8, as applied." *Id.* at 488 (citations omitted; emphasis in original).

■ The trial court held that ORS 166.015 does not fall into the first *Robertson* category, and we agree. On its face, the statute does not "focus on the content of speech or writing." *Robertson*, 293 Or at 416. Nor is it "written in terms directed to the substance of any 'opinion' or any 'subject' of communication." *Id.* at 412. Indeed, ORS 166.015 does not refer to expression at all.

Rather, like the statutes at issue in *State v. Moyle*, 299 Or 691, 705 P2d 740 (1985), and *State v. Garcias*, 296 Or 688, 679 P2d 1354 (1984), ORS 166.015 is a statute that "focuses on a forbidden effect." *Robertson*, 293 Or at 418. In *Garcias*, the Supreme Court categorized the menacing statute, which makes it a crime to attempt to place another in fear of imminent serious physical injury "by word or conduct," as effects-driven:

> "The concern of the menacing statute appears to center on preventing harm to the victim in the form of tension, alarm and whatever injury may result from the confrontation. * * * The fact that the harm may be brought about by use of words, even by words unaccompanied by a physical act, does not alter the focus of the statute, which remains

directed against attempts to cause an identified harm, rather than prohibiting the use of words as such." 296 Or at 697.

Similarly, in *Moyle,* the Supreme Court characterized the harassment statute, ORS 166.065(1), as focusing on proscribing a forbidden effect. That statute makes it a crime to subject another to alarm by conveying certain types of telephonic or written threats:

> "By its terms, the statute does not punish one who conveys a telephonic or written threat unless the threat has the effect of alarming the addressee, and such alarm must be reasonable in the circumstances. Harm to another, in the form of alarm, is the focus of the statute. Speech and writing are merely the means, albeit the only prohibited means, of achieving the forbidden effect — actual and reasonable alarm." *Moyle,* 299 Or at 699.

■ Like those statutes, ORS 166.015 focuses on preventing a specified harm — the creation of a "grave risk of public alarm." "Violent and tumultuous conduct" merely describes the range of means that may be employed to achieve that harm. Thus, ORS 166.015 does not fall within *Robertson's* first category.[2]

The inquiry reduces, then, to whether ORS 166.015 falls into *Robertson's* second category, which is susceptible to an overbreadth challenge, or *Robertson's* third category, which is not. By invalidating the statute as overbroad, the trial court placed ORS 166.015 in *Robertson's* second category. The state argues, however, that because ORS 166.015 does not refer to expression at all, it belongs in the third *Robertson* category.

The distinction between laws in the second and third *Robertson* categories is somewhat uncertain. That uncertainty has its roots in *Robertson* itself. Two oft-quoted portions of the *Robertson* opinion, which explain how effects-driven statutes should be analyzed, contribute to that uncertainty. First:

> "When the proscribed means include speech or writing, however, even a law written to focus on a forbidden effect

---

[2] Our affirmance of the trial court in that particular disposes of defendant's first cross-assignment of error, which asserted that the trial court erred in characterizing the statute as effects-driven, rather than content-driven.

> \* \* \* must be scrutinized to determine whether it appears to reach privileged communication or whether it can be interpreted to avoid such 'overbreadth.' " *Robertson*, 293 Or at 417-18.

But compare:

> "If [a] statute [is] directed only against causing the forbidden effects, a person accused of causing such effects by language or gestures would be left to assert (apart from a vagueness claim) that the statute could not constitutionally be applied to his particular words or other expression, not that it was drawn and enacted contrary to article I, section 8." *Id.* at 417.

The first quoted section *might* be read as stating that if a statute can be violated by a variety of means, and some of those means include expression, the statute is analyzed for overbreadth. Conversely, the second quotation suggests that if a statute can be violated by a variety of means, some of which involve expression, overbreadth is inapposite and a defendant is limited to challenging a statute's vagueness and its constitutionality on an as applied basis.

Uncertainty concerning the content of *Robertson's* second and third categories is exacerbated by the fact that, to the extent we can determine, neither we nor the Supreme Court have ever explicitly assigned a statute to *Robertson's* third category. Conversely, there appears to be no reported instance in which an effects-driven statute has been subjected to overbreadth analysis merely because the proscribed means might, but need not, involve expression. Finally, it appears that, in every case in which a statute has been assigned to *Robertson's* second category, the statute has explicitly mentioned speech or some other form of communicative conduct.

Thus, post-*Robertson* cases have not explicitly acknowledged, much less resolved, the ostensible tension in *Robertson's* description of statutes susceptible to overbreadth challenges. However, in *State v. Plowman*, 314 Or 157, 838 P2d 558 (1992), the Supreme Court described *Robertson's* second category as "focus[ing] on forbidden effects, but *expressly* prohibit[ing] expression used to achieve those effects." *Id.* at 164 (emphasis supplied). The court further described *Robertson's* third category as "focus[ing] on forbidden effects, but without *referring* to expression at

all." *Id.* (emphasis supplied). Since *Plowman,* the Supreme Court and this court have consistently invoked those phrases as shorthand definitions of *Robertson's* second and third categories. *See, e.g., Miller,* 318 Or at 488; *State v. Stoneman,* 132 Or 137, 140, 888 P2d 39 (1994).

Although a requirement that a statute "expressly prohibit[] expression" might provide a useful "bright-line" distinction between *Robertson's* second and third categories, its content and implications bear examination. In particular, what does it mean that a statute "expressly prohibits expression"?

We perceive in *Robertson's* progeny two classes of statutes that fall within the second *Robertson* category. The first includes statutes that explicitly identify communicative conduct as a proscribed means of achieving a forbidden effect. The statutes at issue in *Moyle* (ORS 166.065(1), describing crime of harassment as "subject[ing] another to alarm by conveying a *telephonic or written threat*"), *Garcias* (ORS 163.190(1), describing crime of menacing as intentionally attempting to place another person in fear of imminent physical injury "by *word* or conduct"), and *Robertson* (ORS 163.275, describing crime of coercion as conduct that compels addressee to comply with a "*demand*" out of fear), all fall into that class.

The second class of statutes is less obvious. It includes statutes that, although they do not explicitly refer to communicative conduct, can be violated *only* by means of expression. In other words, regardless of the statute's particular language, a person cannot violate the statute without engaging in communicative conduct. That class acknowledges the dictates of substance over form. Regardless of the precision — or, perhaps, the studied imprecision — of statutory language, when expression is the only possible means of violating the statute, the statute, necessarily, expressly proscribes expression.[3]

---

[3] *Cf. Moyle,* 299 Or at 699:

"The constitutional prohibition against laws restraining speech or writing cannot be evaded simply by phrasing statutes so as to prohibit 'causing another person to see' or 'to hear' whatever the lawmakers wish to suppress."

■       We turn again to ORS 166.015. The statute, on its face, does not explicitly refer to expression. As the trial court observed:

"[T]he statute on its face requires tumultuous and violent conduct. Not one of those statutes that — says just speech or even says by word or deed. There, within its language, looks to be directed at acts."

Instead, the trial court's overbreadth holding seems to rest on its belief that the statute can only be violated by means of expression:

"Then when you look at the definition and the commentary about what that means, going back to where we were this morning, that it has to be threatening, which under these other cases *threats are necessarily expressive*, either speech or expressive conduct. That is part of the analysis they go through in the coercion statute. *You can't threaten somebody without communicating that something bad is going to happen*." (Emphasis supplied.)

Thus, the court's conclusion flowed from its reference to the Criminal Law Commission's commentary to the Oregon Criminal Code, and its interpretation of that commentary as limiting the prohibited conduct to communicative conduct.

The commentary to which the trial court referred reads:

"The term 'tumultuous and violent conduct' is intended to represent more than mere loud noise or disturbance. The language is designed to imply terroristic mob behavior involving ominous threats of personal injury and property damage." Proposed Oregon Criminal Code 212, Commentary § 218 (1970).

We assume, without deciding, that the trial court's resort to the commentary was appropriate under the principles of statutory construction expressed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Nonetheless, we conclude that the court's interpretation of that commentary, as limiting the proscribed conduct to expressive conduct, was incorrect. That interpretation flowed from the erroneous assumption that "threats are necessarily expressive." Although the term "threat" can describe an expressive act, it also describes a much wider range of referents, which serve as "an indication of something impending

and usually undesirable or unpleasant." *Webster's Third New International Dictionary* 2382 (unabridged 1976). In the particular context of the statute at issue here, human beings can produce "threats" of personal injury or property damage by engaging in entirely nonexpressive behaviors — *e.g.*, overturning cars, throwing Molotov cocktails, and breaking storefront windows. Thus, we reject the trial court's apparent conclusion that the statute can be violated *only* by means of expression.[4]

ORS 166.015 does not expressly refer to speech. Nor is expression the only means by which the statute can be violated. Consequently, ORS 166.015 is not within the second *Robertson* category and is not susceptible to an overbreadth challenge. The trial court erred in allowing defendants' demurrers on the ground that ORS 166.015 is overbroad.

Defendants argue that their demurrers should, nonetheless, be sustained on the alternative ground that the phrase "grave risk of public alarm" in ORS 166.015 is unconstitutionally vague.[5] They concede that this court previously rejected a vagueness challenge to ORS 166.015 in *State v. Goodwill*, 35 Or App 293, 297, 581 P2d 113 (1978), *rev den* 285 Or 1 (1979), but argue that that case is not controlling. Although we agree that *Goodwill* is not controlling, we reject defendants' vagueness arguments.

A statute is unconstitutionally vague if it fails "to inform those who are subject to it of what conduct on their part will render them liable to its penalties." *State v. Graves*, 299 Or 189, 195, 700 P2d 244 (1985). In *Goodwill*, the

---

[4] Although we do not believe that the trial court subscribed to such an analysis, its comments could, less plausibly, be interpreted as stating that ORS 166.015 falls into the second *Robertson* category merely because, in particular cases, the proscribed means could involve expression. Such an approach would add a third class of statutes to the two already described as falling into *Robertson's* second category.

That approach is untenable. It would destroy the integrity of *Robertson's* analysis by permitting virtually all as applied challenges to be asserted as facial overbreadth challenges, thus collapsing *Robertson's* third category into its second. Under such an approach, the only cases remaining in *Robertson's* third category would be those in which the statute's proscribed means did not, and could not, involve expression, but defendants were, nevertheless, charged for engaging in communicative conduct.

[5] Defendants do not argue that the phrase "violent and tumultuous conduct" is vague.

defendants asserted, in general terms, that ORS 166.015 was unconstitutionally vague. We rejected that argument after referring to the Criminal Law Revision Commission's commentary on the provision. Although we did not decide whether the statute's text was, in fact, vague, we did conclude that the commentary's explanation of the statutory language provided sufficient precision to withstand the defendants' vagueness challenge. *Goodwill*, 35 Or App at 297.

*Goodwill* is, however, no longer persuasive. In *State v. Norris-Romine/Finley*, 134 Or App 204, 894 P2d 1221 (1995), we disapproved *Goodwill's* gambit of resorting to extrinsic materials to render otherwise arguably vague language constitutionally precise:

> "Although a statute challenged for vagueness may sometimes be 'saved by a judicial interpretation that gives it required definiteness,' the statute itself must speak its meaning to the ordinary person. We cannot rely on the legislative history to provide a meaning that is not apparent from a reading of the statute in its context. A term that has no meaning to the ordinary person without reference to the legislative history cannot withstand a vagueness challenge."
> *Id.* at 210 (citations omitted).[6]

Our inquiry, then, is straightforward: Is the term "grave risk of public alarm," as used in ORS 166.015, facially vague? As noted, *Goodwill* did not decide that issue. We do now, and we conclude that, given statutory context and precedents construing similar language in analogous statutes, the challenged language is sufficiently informative and definite to meet constitutional requirements.

Statutes that describe prohibited effects in terms similar to those employed in ORS 166.015 have been sustained in the face of vagueness challenges. *Moyle* is exemplary. There, the Supreme Court considered whether the harassment statute, which prohibits certain written or telephonic threats that "reasonably would be expected to cause alarm," was vague. The court concluded that it was not:

> "[W]e interpret the term 'alarm' to mean the dictionary definition: 'fear or terror resulting from a sudden sense of

---

[6] *Norris-Romine/Finley* did not refer to *Goodwill*, but its inconsistency with *Goodwill* is obvious.

danger.' 'Fear or terror' are words of common understanding. Furthermore, the alarm can only be caused by specific categories of wrongful conduct, threats to inflict serious physical injury or to commit a violent felony involving the person or property of that person or any member of that person's family." 299 Or at 706.

The same is true of the phrase "grave risk of public alarm" in ORS 166.015. That phrase's meaning is limited in that the term "alarm" has the same content as in *Moyle*—"fear or terror resulting from a sudden sense of danger." Thus, as with the harassment statute in *Moyle*, ORS 166.015 does not prohibit conduct that engenders mere psychic discomfort. Moreover, the fact that the "alarm" to be avoided can be caused only by a specific category of behavior —"violent and tumultuous conduct"—further limits the phrase's scope.

■　　Defendants argue, finally, that *Moyle* is materially distinguishable because, while the harassment statute at issue there prohibited only that conduct causing objectively reasonable alarm, ORS 166.015 does not embody such an "objectively reasonable" limitation. Thus, defendants reason, ORS 166.015 criminalizes conduct causing "subjective" alarm, which is so variable as to defy precise or principled definition.

Defendants are correct that the harassment statute in *Moyle* embodies an element of objective reasonableness:

"While it is true that there may be wide variations in the kinds of threats which subjectively instill alarm in different individuals, the statutory phrase 'threat reasonably * * * expected to cause alarm' has been construed herein to require not only that the addressee have a reasonable belief under the circumstances that the threat actually will be carried out, but also that the factfinder finds this to be objectively probable." *Id.* at 706.

Defendants are wrong, however, in asserting that ORS 166.015 does not embody an equivalent element. *Public* alarm is collective and communal, rather than individual and innately idiosyncratic. Thus, ORS 166.015 differs from a statute that forbids causing individual alarm, but which does not require that such alarm be objectively reasonable.

Because individual alarm can be highly variable and subjective — one person's delight may be another's terror — a statute that criminalizes conduct causing individual alarm may be impermissibly imprecise unless it is phrased either in terms of the actor's reasonable expectations (as in *Moyle*) or of the reasonableness of the alleged victim's response. Conversely, the requirement of public alarm in ORS 166.015, coupled with the requirement that the actor's conduct must create a "grave risk" of such alarm, materially restricts and modulates such variability. Those requirements, in tandem, render ORS 166.015 sufficiently precise to withstand defendants' vagueness challenge.

ORS 166.015 is not unconstitutionally overbroad. Nor is it unconstitutionally vague. Accordingly, the trial court erred in granting defendants' demurrers.

Reversed and remanded.