Argued and submitted October 31, 1996, reversed in part; otherwise affirmed; remanded for resentencing July 23, appellant's petition for reconsideration filed July 28 allowed by opinion September 10, 1997
See 149 Or App 757, 944 P2d 1000 (1997)

# STATE OF OREGON,
*Respondent,*

*v.*

# TEDDY HALL,
*Appellant.*

## (C9406-34332; CA A87453)

942 P2d 882

Steven B. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Teddy Hall filed the supplemental brief *pro se*.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

Deits, C. J., dissenting.

**HASELTON, J.**

Defendant appeals from his convictions for robbery in the first degree, ORS 164.415, robbery in the third degree, ORS 164.395, and felon in possession of a firearm, ORS 166.270, which arose from three separate incidents. Defendant asserts, in part, that the trial court should have entered a judgment of acquittal on the charge of robbery in the third degree, because the state failed to prove that he "use[d] or threaten[ed] the immediate use of physical force upon another person." ORS 164.395(1). We agree that the state's proof was deficient in that regard and, consequently, we reverse the conviction for robbery in the third degree but affirm the remaining convictions and remand for resentencing.

In reviewing a denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). So viewed, the record as to defendant's conviction for robbery in the third degree discloses the following:

On June 21, 1994, at about 10:40 in the evening, defendant walked into the McDonald's restaurant at Jantzen Beach. Defendant, who wore sunglasses with a dark bandana over his head, was dressed in dark jeans and a dark jacket. He walked up to the counter where a McDonald's employee, Ahyek, was working as a server and cashier. Defendant motioned for Ahyek, said, "Come here," and, presenting a small paper bag, told her to "put all of the money into this bag." Ahyek, who had been trained to cooperate in such situations, opened the cash register and gave defendant all of the money in the top drawer. Defendant then said, "No, I want what is underneath," and Ahyek then gave him the money in the lower drawer. Defendant then said, "No, I want what is in the other drawers," and Ahyek pulled out the remainder of the cash drawers and set them on the counter so that defendant could see that they were empty. Throughout the encounter, defendant neither displayed a weapon nor suggested that

he might have a weapon. He made no threatening statements or gestures. Defendant then turned around and, without any further comment, began to walk out of the restaurant.

During defendant's encounter with Ahyek, Atkinson, another McDonald's employee, was sweeping the floor. As defendant walked toward the exit, he passed Atkinson, looked at him, and said something that Atkinson did not hear. A customer later told Atkinson that defendant "said something about not following him or something." At about the same time that defendant was leaving the restaurant, Ahyek "started yelling."[1] Atkinson turned to her and told her to dial 9-1-1, which she did. When Atkinson looked outside to find defendant, defendant was already gone.

Defendant was subsequently arrested and charged with robbery in the third degree, as well as other crimes arising from other incidents. The indictment alleged that defendant used or threatened to use physical force on Ahyek while committing the theft.

At trial, after all evidence had been submitted, the court *sua sponte* inquired whether the evidence was sufficient to support a conviction for robbery in the third degree and, particularly, whether the state had proven that defendant had "use[d] or threaten[ed] the immediate use of physical force." ORS 164.395(1). The state argued that, although defendant had not made verbal threats or engaged in explicitly threatening behavior, an implicit threat was sufficient to satisfy the statute. The state further argued that the jury could find such an implicit threat based on defendant's conduct and the fact that Ahyek yelled as defendant left the restaurant. The court agreed:

"I have to decide whether any—there is any basis in the evidence, including inferences, that can be drawn that would lead a reasonable jury to conclude that you threatened Miss Ahyek in some way; that, you know, just your presence there, the way it was going down combined with

---

[1] The record does not disclose why Ahyek yelled or what, if anything, she yelled.

her reaction was enough to show a use or threat of use of physical force.

"And what [the prosecutor] has described in looking at all of the testimony and all of the circumstances, including the fact that she screamed when it was over, I can't say that there is absolutely nothing there to go to a jury. If I can't say there is absolutely nothing to go to a jury, no matter how I feel about it, the jury gets to decide it."

The jury subsequently convicted defendant of, *inter alia*, robbery in the third degree.

On appeal, defendant assigns error to the trial court's denial of a judgment of acquittal on the charge of robbery in the third degree. He reiterates that the state failed to prove that he "use[d] or threaten[ed] the immediate use of physical force" against Ahyek. We agree.

ORS 164.395(1) provides that a person commits robbery in the third degree if

"in the course of committing or attempting to commit theft the person uses *or threatens the immediate use of physical force upon another person* with the intent of:

"(a) Preventing or overcoming resistance to the taking of the property or to retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver the property or to engage in other conduct which might aid in the commission of the theft." (Emphasis supplied.)

Because the state does not contend that defendant actually used force, our inquiry is reduced to whether, from the evidence, a jury could find beyond a reasonable doubt that defendant threatened the immediate use of physical force against Ahyek.

The criminal code does not define "threaten" or "threat," and no reported decision has comprehensively defined those terms in the context of ORS 164.395.[2] Two of

---

[2] We have, however, addressed the meaning of "threat" in other criminal contexts. For example, in *State v. Chakerian*, 135 Or App 369-70, 900 P2d 511 (1995), *aff'd* 325 Or 370, 938 P2d 756 (1997), we noted that, for purposes of construing the anti-rioting statute, ORS 166.015, a "threat" could encompass "entirely nonexpressive behaviors" that "serve as 'an indication of something impending and

our decisions do, however, give some guidance as to the meaning of "threaten" as used in the robbery statute. First, in *State v. Dillman*, 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979), which involved a conviction for robbery in the second degree, ORS 164.405, we concluded that, where the defendant announced, "This is a stick-up, I mean it" and then pointed a pistol at each of four bank tellers in succession, the imposition of multiple convictions was proper:

> "Although the 1971 Criminal Code Revision included robbery in the chapter entitled Offenses Against Property rather than Offenses Against Persons, the Commentary indicates that the gravamen of the robbery offense is the threat of harm to persons. Proposed Original Criminal Code, 155-56 (1970). This conclusion is reinforced by the statute itself, which does not require a completed theft as an element of the crime. Also, the degree of robbery varies according to the severity of the threat or danger of harm to the person, not according to the value of the property that is the subject of the theft or attempted theft. Thus, it appears that the legislature intended that the assault aspect of the crime of robbery be dominant and each person assaulted is the victim of the crime.

> "* * * * *

> "We conclude that because the distinctive aspect of robbery is the threat of violence to a person, when defendant pointed his gun at and demanded money from each of four different bank tellers, each teller was a victim of the robbery. Therefore, defendant committed four separate offenses." 34 Or App at 941-42.

Second, in *State v. Odoms*, 117 Or App 1, 5, 844 P2d 217 (1992), *rev den* 316 Or 529 (1993), we affirmed a conviction for robbery in the third degree and, in so doing, commented that "[t]he record contains evidence from which a rational jury could infer that defendant threatened, *expressly or impliedly*, to use physical force" against the victim.

---

usually undesirable or unpleasant,'" 135 Or App at 376-77, *quoting Webster's Third New International Dictionary* 2382 (unabridged 1976). *See also State v. Scott*, 63 Or 444, 447, 128 P 441 (1912) ("Threat" for purposes of a former anti-extortion statute (now codified in substantially revised form at ORS 164.075) meant "a written or verbal declaration of the purpose of the one making it to work an injury to the person, property, or rights of another, and designedly uttered or promulgated by the individual making the threat, either directly or by some agency set in operation by him or with his consent in such a way as to bring the threat to the notice of or cause it to operate upon the mind of the person threatened.").

(Emphasis supplied.) Although we did not explicitly identify the evidence underlying that conclusion, our recounting of the pertinent facts included the following description of the interaction between the defendant and the victim, Kidwell:

> "Defendant * * * took [Kidwell] to an apartment where some of his friends lived. That night, defendant instructed Kidwell about how to be a prostitute. The next day the two argued about Kidwell becoming a prostitute, and Kidwell tried to persuade defendant that she could do something else for him, such as sell drugs. When asked why she did not simply leave, she testified, 'I was scared to.'

> "Over the next two or three days, Kidwell had sexual intercourse with defendant, engaged in sodomy with him, worked as a prostitute for him and signed a paper that defendant used to sell her car. He kept the money for himself. During those days, defendant hit Kidwell on at least one occasion, because she had not brought him enough money. When asked whether that money was for committing sex acts with people, she testified, 'Yeah. I had to do it or else—I had to.'

> "At some point during the three days, defendant drove Kidwell from Portland to Salem so that she could pick up some clothes at her sister's house. She testified that she did not use that opportunity to escape from defendant, because she feared that he might hurt her sister or her nephew. On September 28, Kidwell was picked up by police. Her face was bruised. She told them what had happened." *Id.* at 4.

■ From *Dillman* and *Odoms*, we conclude that what distinguishes robbery in the third degree from simple theft, ORS 164.015,[3] is the former's "assaultive" character, *i.e.*, the actual use of physical force or the threat of *immediate* use of physical force against the victim. *See Dillman*, 34 Or App at 941-42. We further conclude, consistent with those holdings and common usage,[4] that a defendant "threatens the immediate use of physical force" when, by words or conduct, the

---

[3] ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

[4] *Webster's Third New International Dictionary* 2382 unabridged (1993) defines "threat" as

defendant communicates his or her determination to use physical force if the victim does not promptly accede to the defendant's demands. The standard is one of objective reasonableness: Would a person in the victim's position reasonably regard the defendant's *words or conduct* as communicating the requisite threat?

■ Applying that definition, we conclude that the evidence was insufficient to support a conviction for robbery in the third degree. The evidence shows only that defendant demanded cash and that Ahyek acquiesced in that demand. There is no evidence that defendant made verbal threats or engaged in conduct that indicated that he would, in fact, immediately resort to physical force unless his demand was met. Moreover, although there was evidence that Ahyek "yelled" after defendant had turned from the counter and was leaving the restaurant, there is no evidence as to why Ahyek yelled. Certainly, Ahyek herself did not testify that she regarded defendant's conduct as threatening.[5] On these facts, the state may well have proven theft, but it did not prove robbery.[6]

The dissent asserts that our conclusion cannot be squared with *Odoms. See* 149 Or App at 369. To the contrary,

---

"**1**: an indication of something impending and [usually] undesirable or unpleasant * * * as **a**: an expression of an intention to inflict evil, injury, or damage on another [usually] as retribution or punishment for something done or left undone * * * **b**: expression of an intention to inflict loss or harm on another by illegal means and [especially] by means involving coercion or duress of the person threatened[.]"

The same source defines "threaten":

"**1**: to utter threats against: promise punishment, reprisal, or other distress to * * * **2** * * *: to charge under pain of punishment: warn * * * **3**: to promise as a threat: hold out by way of menace or warning[.]"

[5] In referring to Ahyek's testimony, we do not imply that her subjective reaction—or nonreaction—is dispositive. Again, the operative standard is one of objective reasonableness. Nevertheless, a particular victim's subjective perception or reaction may be probative, albeit not conclusive, of how an objectively reasonable person in the victim's position might regard a defendant's behavior.

[6] The state argues, alternatively, that the statement defendant made to Atkinson, or to the nearby customer, as defendant left the restaurant constituted a threat, and that that threat was sufficient to support the verdict. However, the indictment specifically named Ahyek as the victim, without any reference to Atkinson or any other person. The jury instructions tracked the indictment. There was no evidence that Ahyek heard defendant's statement as he left the restaurant; thus, that statement could not have constituted a threat to Ahyek.

*Odoms* is materially distinguishable. There, as noted, the record disclosed that, during the same period in which the robbery occurred, the defendant hit the plaintiff on at least one occasion, causing her face to be bruised. 117 Or App at 4. The record in *Odoms* further disclosed that the victim had not attempted to escape from the defendant, and had submitted to prostitution, because she was frightened of the defendant and feared that he might hurt members of her family: "I was scared to." "Yeah, I had to do it or else—I had to." *Id.* Here, the theft did not occur in the context of threats or physical violence by defendant. Nor, as noted, did Ahyek ever state that she was frightened by defendant. The express or implied threats in *Odoms* simply did not occur here.

■ We note, moreover, that the meaning of "implied threat" in *Odoms* is uncertain. *Odoms* used that term once, in cursory fashion, without explanation. We are unaware of any other Oregon decision that has used, much less amplified, that term. At the very least, however, an "implied threat" must mean something more than the circumstantial potential for violence that exists in every personal theft. Otherwise, "threatens the immediate use of physical force upon another person" would, as a practical matter, be read out of the statute. *Accord* ORS 174.010 (in construing a statute, a court shall not "insert what has been omitted, or [ ] omit what has been inserted").

The dissent would do just that. In finding sufficient evidence of an "implied threat" here, the dissent points to defendant's proximity to Ahyek during the course of the encounter and defendant's insistence that Ahyek produce all the available cash. *See* 149 Or App at 369-70. Those facts will be present in virtually every face-to-face theft.[7] *Accord Parnell v. State*, 389 P2d 370, 374 (Okl Crim App 1964) (" '[W]here a person parts with money upon a mere demand made in a rough, positive voice, with an oath, the taking is

---

[7] The dissent also notes that defendant was wearing clothing, which Ahyek described as a "disguise." 149 Or App at 369-70. The dissent does not explain, nor do we understand, how the "disguise" evinced anything more than defendant's desire to conceal his identity. *Cf. State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977) ("shined shoes, sharp clothes, neat 'Afro' haircuts, and people who stand and stare at officers" are not grounds for suspecting criminal activity).

not robbery; the menace not being such as to excite reasonable apprehension of danger' " (quoting *Davis v. Commonwealth*, 21 Ky L Rep 1295, 54 SW 959 (1900))); *State v. Peebles*, 138 Tex Crim 55, 134 SW2d 298, 299 (1939) (threat made on busy sidewalk that, if victim did not give defendant money he would "leave her like he left a woman the night before," could not support robbery conviction).

It cannot be gainsaid that here, as in every personal theft, there was a generic potential for violence. That circumstantial potential is not, however, sufficient, without more, to establish the statutorily prescribed threat of the "immediate use of physical force upon another person."[8] In this case, there was no evidence from which a jury could find, beyond a reasonable doubt, that defendant either expressly threatened Ahyek or intimated to Ahyek that he would resort to physical force unless she followed his instructions. We thus conclude that the trial court erred in denying a judgment of acquittal on the charge of robbery in the third degree.

Defendant's second assignment of error asserts, with respect to all charges, that the court erroneously accepted his waiver of counsel. We have reviewed, and reject, that assignment without further discussion. We have also reviewed, and reject without further discussion, the arguments presented in defendant's supplemental brief.

Conviction for robbery in the third degree reversed; otherwise affirmed; remanded for resentencing.

**DEITS, C. J.,** dissenting.

I agree with the majority's conclusion regarding defendant's argument relating to waiver of counsel as well as its disposition of the arguments in defendant's supplemental brief. I disagree, however, with the majority's holding that the trial court should have granted defendant's motion for judgment of acquittal on the charge of robbery in the third degree. The majority concludes that the evidence in this case

---

[8] The dissent invokes various federal decisions as authority for its position. *See* 149 Or App at 371-72. Those decisions apply 18 USC § 2113(a), a statute whose terms are much broader than those of ORS 164.395(1). Most significantly, the federal statute permits conviction upon proof of "intimidation," an element that is considerably less precise than "threatens the immediate use of physical force."

cannot support the jury's conclusion that defendant used or threatened the immediate use of physical force on another person. In my view, when the entire circumstances here are considered, as they should be, there clearly is evidence from which a rational jury could infer that defendant impliedly threatened to use physical force against the victim. Accordingly, I dissent.

In order for a jury to convict a defendant of robbery in the third degree, the state must prove that the defendant used or threatened the immediate use of physical force against a person while attempting to commit a theft. ORS 164.395. As we held in *State v. Odoms*, 117 Or App 1, 5, 844 P2d 217 (1992), *rev den* 316 Or 529 (1993), the "threat" may be proven by evidence that the defendant expressly *or impliedly* placed the victim in fear of use of physical force. As the majority points out, the applicable standard is one of objective reasonableness: "Would a person in the victim's position reasonably regard the defendant's words or conduct as communicating the requisite threat?"

The trial court here denied defendant's motion for judgment of acquittal, concluding that there was evidence in the record from which a rational jury could infer that defendant threatened to use physical force against the victim. If there is any evidence supporting that ruling, we will not disturb it. *Odoms*, 117 Or App at 5-6. The majority concludes that there was no evidence here from which the jury could draw that inference, stating that "[t]here is no evidence that defendant made verbal threats or engaged in conduct that indicated that he would, in fact, immediately resort to physical force unless his demand was met." 149 Or App at 365. I believe that there is evidence here from which the requisite threat may be inferred and, accordingly, that the trial court did not err in denying the motion for judgment of acquittal.

Although the majority does not explicitly reject the premise that a threat of physical force may be implied, that conclusion essentially underlies its holding here. The majority seems to require that in order to prove the requisite threat, there must be proof of a statement or act that *directly* indicates that physical force will be used if the person's

demands are not met. I believe that there are some circumstances in which no words or acts are used that directly indicate that physical force will be used if the victim does not comply, yet which allow an inference of such a threat.[1] As noted above, we have previously so held. *Odoms,* 117 Or App at 5.

In *Odoms,* a woman who was kidnaped and later forced to sell her car and give the money to the defendant and to engage in prostitution over a period of three or four days testified that she was too "scared" to leave. 117 Or App at 4. In that case, although the defendant did hit the victim once at some point during the incident, there was no evidence that the defendant hit the victim or told her that he would hit her contemporaneously to demanding that she sell her car and give him the money, which was the conduct on which the third-degree robbery charge was predicated.[2] We concluded that, in those circumstances, there was sufficient evidence from which a jury could infer that the defendant threatened to use physical force against the victim and upheld the robbery conviction. *Id.* at 5-6.

The majority asserts that *Odoms* is factually distinguishable, which it is. Nonetheless, I agree with the trial court that there are sufficient facts here to allow the jury to evaluate whether the requisite threat could be inferred. Defendant came into the restaurant, late at night, just before closing, wearing dark glasses, dark clothing and a bandanna that completely covered his hair. The victim, Ahyek, referred to defendant's apparel as a "disguise."[3] She testified that

---

[1] A defendant's nonverbal communication may speak more to the situation than does his or her actual words or purposeful gestures. *See* Mark L. Knapp, *Nonverbal Communication in Human Interaction* (1978) (stating that people constantly analyze nonverbal cues to predict future behavior and that 35 percent of the social meaning of a communication is transmitted through words and paralinguistics, or nonsemantic verbal communication, while 65 percent of the social meaning is derived through kinesics, or the nonverbal component of the communication).

[2] Making the victim sell her car and give him the money was the act on which the third-degree robbery charge was predicated. *State v. Odoms,* 313 Or 76, 78, 829 P2d 690 (1992), *on remand* 117 Or App 1, 844 P2d 217, *rev den* 316 Or 529 (1993).

[3] The majority views the fact that defendant was attempting to conceal his identity as meaningless. While not decisive, it is certainly part of the totality of the circumstances that may be evaluated to decide if defendant's behavior was sufficiently threatening.

defendant motioned to her and told her to come to where he was standing at the end of the counter. She said that at that point, she "knew what he wanted" because she had been in "that situation before."[4] Defendant then told her to "[p]ut all the money into this bag," while handing her a paper bag. After she put the money in the drawer of the cash register in front of her into the bag and handed it to defendant, he ordered her to get the money from underneath the drawer. Ahyek testified that defendant did not leave until she had placed all the cash register drawers on the counter to show him that there was no money in them. When defendant demanded the money in the cash register from Ahyek, he was directly across the counter from her. No one else was at the counter or close enough to hear defendant's demands. Ahyek testified that she had been trained to cooperate in these kind of circumstances, which she described as "robbery situations." As defendant was leaving, Ahyek began yelling.

The evidence here clearly shows that defendant did not simply request that she give him the money—he demanded the money from her, while he was close enough to hand her a bag and while she was, essentially, alone. Ahyek had to make a decision: refuse defendant's demands and risk harm not only to herself but also to other persons in the restaurant, or accede to his demands as she had been trained to do. She chose not to take the risk. It does not follow from that fact that she did not feel threatened or that an objectively reasonable person in her position would not feel threatened.[5] Indeed, Ahyek's testimony that she regarded the circumstances in which she found herself as a "robbery situation[ ]" may reasonably be understood to indicate that she felt threatened.

The majority states that the fact that defendant was close to Ahyek during the "encounter" and his "insistence" that Ahyek produce all the available cash are facts that are "present in virtually every face-to-face theft." 149 Or App at 366. However, my opinion that the evidence here would allow

---

[4] Ahyek had worked at McDonald's for 14 years.

[5] I agree with the majority that Ahyek's subjective reaction or lack of reaction is not dispositive but that it may be probative of how an objectively reasonable person in victim's position might regard defendant's behavior. 149 Or App at 365 n 5.

a jury to have found that the essential elements of robbery were proved beyond a reasonable doubt does not depend on those two facts alone. Rather, as I discussed above, it is based on all of the circumstances here. Moreover, while I agree that most face-to-face confrontational thefts do involve a person standing close to a victim and "insisting," or, as I view it in this case, demanding, money, I disagree with the majority's apparent view that because so many thefts today involve a face-to-face confrontation, that it follows that, as a matter of law, this type of behavior may *not* constitute a threat sufficient to transform a simple theft into a robbery. Simply because a particular type of behavior has become typical or routine does not mean that that behavior can never be evidence of a threat.

It is an unfortunate fact that, because so many thefts today involve a face-to-face confrontation in which force is used or threatened, that tellers and other employees are instructed to submit to a person's demands for money in order to decrease the potential for escalating threats and harm. It makes no sense to me to conclude that, because of that fact, immediate submission is evidence that a defendant has not threatened a victim. It is the immediate submission, borne of a victim's reasonable expectation that harm will occur, that makes it possible for a person to successfully take money from a restaurant with no more than a demand for money in a face-to-face confrontation without the need of an overt threat. *See United States v. Robinson*, 527 F2d 1170, 1172 (6th Cir 1975) ("Especially in an era characterized by a dramatic increase in crime generally * * * and by increased violence, such circumstances [defendant wore baggy clothes that could conceal a weapon, acted 'somewhat nervously in line' and told the teller to " 'Give me all your money' "] could well 'produce in the ordinary person fear of bodily harm.' "). (Citations omitted.)

The evolving change in the "reasonable person's" perspective of what constitutes a threat may explain the outcomes in the two cases from other states to which the majority cites. *Parnell v. State*, 389 P2d 370, 374 (Okla Crim App 1964), quotes from a 1900 case to support its conclusion that a demand for money made in a rough voice is not a robbery because the menace is not sufficient to " ' "excite reasonable

apprehension of danger." ' "[6] How the reasonable person responded to such a demand in 1900 or even 1964 is likely quite different from how a reasonable person would react to such a demand today. Similarly, *State v. Peebles*, 138 Tex Crim 55, 134 SW2d 298, 299 (1939), the second case the majority cites, was written in 1939.[7] I believe that the court's decision in *Robinson* and other more recent cases underscore this changing perspective of what constitutes a threat.[8] *See, e.g.*, *United States v. Graham*, 931 F2d 1442, 1443 (11th Cir), *cert den* 502 US 948 (1991) (intimidation found where defendant leaned toward the victim, used "glares and stares" and where the victim could not see whether the defendant had a gun); *United States v. Higdon*, 832 F2d 312, 315 (5th cir 1987) *cert den* 484 US 1075 (1988), (intimidation found based on the defendant's posture and "terse and pointed orders"); *United States v. Slater*, 692 F2d 107, 109 (10th Cir 1982) (the defendant entered the tellers' area and began to take money but said nothing until the bank manager asked him what he was doing, to which he replied, "Shut up." The court concluded that the jury could have found that defendant's "aggressive behavior" intimidated the tellers, stating that "[a]n incident of this kind obviously creat[es] a dangerous situation" and that "an expectation of injury was reasonable in the context of an incident of this kind where a weapon and a willingness to use it are not uncommon.").

---

[6] *Parnell* involved a case in which a repair person asked an elderly woman to pay him $600 for a job that he had said would cost her $25. The woman testified that she was afraid, but the evidence showed that the repair person and the boy with him were polite and that, although the repairman asked for an amount of money that seemed to be too high for the amount of work done, he never demanded immediate payment.

[7] I might note, also, that this case, as the majority points out, involves a demand made on a *busy* sidewalk. Whether a reasonable person would feel threatened that someone would inflict harm with many people around to witness and prevent the harm is a distinctly different circumstance from the one with which we are concerned here.

[8] The majority asserts that the term "intimidation," which is an element of 18 USC § 2113(a) of the Bank Robbery Act, "is considerably less precise than 'threatens the immediate use of physical force' " found in ORS 164.395(1). 149 Or App at 367 n 8. Although I agree with the majority that the term "intimidation" does not have the exact same meaning, I do note that "intimidation" as used in 18 USC § 2113(a) is synonymous with the phrase "to make fearful or to put into fear" and that the victim's fear is of "bodily harm from the defendant's acts." *United States v. Higdon*, 832 F2d 312, 315 (5th Cir 1987), *cert den* 484 US 1075 (1988).

It is not my position that any time a person takes money from another person while in their presence that a robbery has occurred. I simply believe that there was evidence here from which a jury could have inferred from defendant's words and conduct that a reasonable person in Ahyek's position would have felt threatened and would have thought that, had she not acquiesced to his demands, she would have been at risk of physical injury. For all of the above reasons, I agree with the trial court that defendant's motion for acquittal should have been denied and, accordingly, I respectfully dissent.