**Greg GOODWINE, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 87–251.**

Supreme Court of Wyoming.

Nov. 18, 1988.

Leonard D. Munker, State Public Defender, and Julie D. Naylor, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, and Terry L. Armitage, Asst. Attys. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Greg Goodwine (Goodwine) appeals his conviction of robbery for which he was sentenced to not less than two nor

more than three years to be served concurrently with an identical term on a charge of probation revocation.

Goodwine raises two issues:

1. The introduction of appellant's statements to law enforcement personnel was reversible error.

2. The evidence presented to the court was insufficient to sustain the conviction.

We reverse Goodwine's conviction of robbery, sustain his conviction of the lesser-included offense of larceny, and remand for resentencing on the crime of larceny.

Since the sufficiency of evidence issue is dispositive, we need not address the issue of the admissibility of incriminating statements.

Around noon on Sunday, December 14, 1986, Goodwine entered the front doors of the lobby of the Showboat Motel in Casper, Wyoming, and, with a slight limp, walked directly to the registration counter where Leilah Montoya, the desk clerk, was working alone. Goodwine's height was between 5′7″ to 6′ and his weight was between 160–165 pounds. His hair was long and he wore blue jeans, a jacket, and a black baseball cap. Ms. Montoya's height was 4′11″ and her weight was 98 pounds.

Unknown to Ms. Montoya, Goodwine had suffered a severe "closed head injury" in an automobile accident on August 25, 1985. This injury resulted in severe neurological deficiencies which adversely affected his speech and gait. When Goodwine approached the counter, Ms. Montoya asked if she could help him. Goodwine spoke lowly and softly and mumbled, so that Ms. Montoya could not understand what he was saying. She testified that Goodwine stood there for a moment, and then he reached into his pants pocket and produced two lighters. He slammed them down on the counter in front of Ms. Montoya and pushed them toward her. He mumbled something, but she could not understand him. She took it that he wanted her to buy the lighters, and told him she was not interested. He stepped back from and then toward the counter, picked up the lighters and put them into his pocket, stepped back from the counter, looked around the lobby area, and stepped back and forth in a continuous circle.

Goodwine then asked Ms. Montoya if there was a restroom or restaurant, and she replied there was not. She believed his voice was getting louder as he was getting agitated because she could not understand his words. He put his hands back into his pocket and pulled his right hand back out of his pocket. Ms. Montoya thought he probably had a gun in his pocket. Goodwine then walked toward the counter and looked over a glass partition on the counter above the cash register. Ms. Montoya by then was feeling very nervous and was beginning to be frightened that he was going to rob the motel.

Goodwine then backed away from the counter and walked around the corner of the counter leading to the office. Ms. Montoya was feeling very frightened that he was coming back there to rob the cash register. She grabbed the cash register key, which was in the register, locked the cash register, took the key out, and tried to, but could not get, another cash register key hidden under the counter. She turned around and was going to grab a club, but she could not reach it; she tried to swing shut a fourfoot high steel gate at the entry way to the registration area, but she could not reach it either. Goodwine was standing about two feet away from the gate. Ms. Montoya left the counter and registration area by going into a back office and slamming the door which locked automatically.

From the back office she called 911 and asked for police assistance. She was feeling frightened that he was going to take the cash register money and frightened for herself. After calling for police assistance, she opened the office door slightly and peeked out; she saw Goodwine behind the counter and the closed cash register. She was going to try again to reach for the club, but he was too close. He was riffling registration cards and other papers and touching the cash register keys. Ms. Montoya closed the office door and called 911 again. She returned to the office door, opened it slightly, peeked out, and saw

Goodwine by the open cash register stuffing cash into his pocket. She closed the door, did not see Goodwine leave, and came out of the back office when a policeman arrived.

Ms. Montoya estimated Goodwine took between $300 to $320 in various denominations, including twenty-dollar bills. She testified that Goodwine had not asked her for any money.

The police located Goodwine a short time later at a fast food outlet near the motel. When the officer talked about money that was taken from the motel, Goodwine volunteered to the officer that the money was under a table next to their table. So Goodwine would not be left unattended, the officer asked a waitress to come over and retrieve the money. The waitress picked up $169 in currency, and Goodwine was arrested. At the Natrona County jail during the police search of Goodwine, six twenty-dollar bills fell from inside the left pant leg pocket area. After a bench trial he was convicted of the crime of robbery.

Apart from Goodwine's statements to police officers, substantial evidence exists to support Goodwine's conviction of the crime of larceny; therefore, we need not consider Goodwine's claim that his incriminating statements were erroneously admitted into evidence. We do, however, consider whether there is sufficient evidence to support his conviction of robbery.

W.S. 6–2–401(a)(ii) (June 1983 Repl.) states in pertinent part that a person is guilty of robbery if in the course of committing a crime defined by W.S. 6–3–402 (June 1983 Repl.) (such as larceny) he "threatens another with or intentionally puts him in fear of immediate bodily injury." [1] Although we are satisfied with the evidentiary basis for the trial court's finding that Goodwine committed larceny, we must review the evidence to determine whether it is sufficient to allow the trial court, sitting as the finder of fact, to form a basis for a reasonable inference of guilt proved beyond a reasonable doubt. *Righter v. State*, 752 P.2d 416, 420 (Wyo.1988). Specifically, we review the state's evidence

that Goodwine threatened Ms. Montoya with immediate bodily injury or intentionally put her in fear of immediate bodily injury, so as to elevate the larceny to robbery.

 At common law, the taking of property under circumstances calculated to terrorize the victim was identified as the more serious offense of robbery. Model Penal Code and Commentaries, 2 A.L.I. 96, § 222.1 comment 1, p. 96 (1980). "These circumstances were described as a taking from a person or in his presence by force or by putting the victim in fear of immediate bodily injury." See generally 2 W. LaFave and A. Scott, Substantive Criminal Law § 8.11 (1986). In Wyoming, the heart of the robbery offense is the combination of larceny and either the threat to the victim of immediate bodily injury or the intentional placing of the victim in fear of immediate bodily injury. The legislative intent of the robbery statute is to reach all forms of express and implied threat immediately to inflict bodily injury as a result of which the accused takes property from the victim. The unique feature of robbery is the victim's relinquishing property in the face of the immediate possibility of the actor's execution of the threat to do bodily harm. The language used, "threatens" and "intentionally puts in fear," contemplates purposeful behavior and focuses upon the accused's purposeful conduct in conveying, by either express verbal threats or implicit nonverbal physical movement or both, that harm will immediately result if the victim resists the taking. From this reasoning, we see that it is the accused's conduct in communicating, either verbally or with physical movement or both, the threat of injury that controls, *not* the victim's reaction to that accused's conduct. Our focus on the accused's purposeful behavior assures that the robbery offense properly identifies those offenders who pose the risk of bodily harm to which the crime is addressed. If our focus were on the victim's reaction to an accused's conduct, we would run the risk that a victim's subjective overreaction to benign conduct

1. The language as codified in the June 1988 Replacement is identical.

would unjustifiably escalate an offense from a less serious to a more serious crime.

Focusing on the accused's purposeful behavior, the court in *Mangerich v. State*, 93 Nev. 683, 572 P.2d 542 (1977), upheld the accused's robbery conviction where the accused entered a 7–11 store, said "good morning" to the female sales clerk, placed a ski mask over his head and told the clerk, "[g]ive me all the money." The court explained, 572 P.2d at 543:

> Of course, '[t]he courageousness or timidity of the victim is irrelevant; it is the acts of the accused which constitute an intimidation.' *United States v. Alsop*, 479 F.2d 65, 67 (9th Cir.1973). The standard is objective. 'If the fact attended with circumstances of terror, such threatening word or gesture as in common experience is likely to create an apprehension of danger and induce [another] to part with his property for the safety of his person, it is robbery.' *Hayden v. State*, 91 Nev. 474, 476, 538 P.2d 583, 584 (1975). Certainly, the appearance of a strange man in a ski mask demanding money could cause a reasonable clerk to fear for her safety and relinquish property. Cf. *United States v. Robinson*, 527 F.2d 1170 (6th Cir. 1975); *State v. Stephens*, 66 Ariz. 219, 186 P.2d 346 (1947); and *Flagler v. State*, 198 So.2d 313 (1967).

In *Hayden*, cited in the above quote, the court upheld accused's two robbery convictions arising from separate motel robberies. In the first, accused entered the motel office at midnight, stated he was desperate, and told the female manager, "I want your money." She gave him the money from the cash drawer, noting she could only see one of his hands. She testified she was scared and afraid of what might happen; she said she did not know whether she was going to be tied up or killed. In the second robbery, the accused entered the motel office at 3:25 a.m., and told the female desk clerk who was alone that he had to rob her. She replied that he must be kidding, to which accused said, "No, lady, I'm not kidding * * * don't try anything funny."

As pointed out in *United States v. Alsop*, 479 F.2d 65, 67 (9th Cir.1973), if the focus were on the victim's reaction and not on the accused's conduct, "a fearless banker could never be robbed by intimidation." Conversely, a timid banker could always be robbed under a benign or ordinary circumstance.

Under this analysis, we are not saying a victim must actively resist the accused in order to provoke a more compelling display of force. We consider it absurd to require a victim to "take on" an accused in order to establish the fear of immediate bodily injury necessary to create the crime of robbery.

■ Applying this analysis to the evidence favorable to the state and the inferences from that evidence which can reasonably be drawn, we hold the state failed to put forth sufficient evidence to establish beyond a reasonable doubt that Goodwine's conduct was such as in common experience was likely to create an apprehension of immediate danger and induce Ms. Montoya to part with the motel's property for the safety of her person. In particular, we note that Goodwine made no demand for money, uttered no words conveying a threat of bodily harm, made no physical gestures conveying a threat of bodily harm, displayed no weapon, and made no attempt to disguise or conceal his facial features. From the totality of the evidence, the state points to a man with a speech impediment who looks over the registration counter and walks toward the end of that counter. At that point, Ms. Montoya locked the cash register, left the area, and stayed behind a locked door. No taking of property happened until the accused found the hidden cash register key, opened the cash register, and stuffed money into his pockets. We hold the state failed to put forth sufficient evidence to allow the trial court to form a basis for a reasonable inference of guilt beyond a reasonable doubt that Goodwine took the motel's property by threatening Ms. Montoya with immediate bodily harm or by intentionally putting her in fear of immediate bodily injury.

In *Simonds v. State*, 762 P.2d 1189, 1193 (Wyo.1988), we reiterated that if we determine

> it is appropriate to reverse a conviction of an appellant for an offense, [we] may order that the appellant be resentenced for a lesser-included offense in the event the jury verdict supports such a conviction.

We apply that principle here. Larceny is a lesser-included offense of robbery. See W.S. 6–2–401 (June 1983 Repl.); and W.S. 6–3–402 (Cum.Supp.1985).[2] The trial court's verdict supports Goodwine's conviction of larceny; therefore, we set aside Goodwine's robbery conviction, sustain his larceny conviction, and remand to the trial court for resentencing on the larceny conviction.

CARDINE, Chief Justice, dissenting.

My concern with the opinion of the court is the effect it will have on future cases of this kind. After a recitation of facts, the court concludes that appellant did not "intentionally [put the victim] in fear of immediate bodily injury," per W.S. 6–2–401(a)(ii) and, therefore, was not guilty of robbery. Factual determinations and the inferences to be drawn from facts are for the trier of fact and not for the appellate court. The court, quoting from *Mangerich v. State*, 93 Nev. 683, 572 P.2d 542, 543 (1977) states, "'If the fact be attended with circumstances of terror, such [as a] threatening word or gesture as in common experience is likely to create an apprehension of danger and induce [another] to part with his property for the safety of his person, it is robbery.'" A summary of the fact situation recited by the court is that appellant entered the motel office not seeking to register or obtain a room, he mumbled, looked around the lobby, stepped back and forth in a continuous circle, asked if there was a rest room, his voice was getting louder and agitated, put his hands in his pockets as though he had a gun, walked toward the counter, and looked over the glass partition at the cash register. The clerk thought appellant was going to rob the motel, grabbed the cash register key, locked it but could not get another key hidden under the counter as she hurriedly left the registration area to enter a back office, where she slammed a door that locked automatically. What she feared appellant intended to do is exactly what he did. He came behind the counter, opened the cash register, stuffed the cash in his pocket and robbed the motel.

From this scenario, a trial judge who observed the witnesses and assessed their credibility could reasonably conclude that what occurred between appellant and the motel clerk was such as in common experience would be "likely to create an apprehension of danger and induce [another] to part with his property for the safety of his person." If the fact trier could reasonably reach that conclusion, this was a robbery.

The alternative action for Ms. Montoya, the desk clerk in this case, was to stand her ground, face up to appellant, and face possible serious injury by a man who intended to rob the motel and who in fact did rob the motel after he had scared her off by threatening gestures and mannerisms. I would affirm.

---

**2.** At the time of appellant's conviction, larceny of property valued at less than $500 was a misdemeanor and "punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both * * *." W.S. 6–3–402(c)(iii) (Cum. Supp.1985).