No. 79,807

STATE OF KANSAS, *Appellee*, v. ANTONIO C. MOORE, *Appellant.*

(4 P.3d 1141)

Opinion filed April 21, 2000.

*Cory D. Riddle*, assistant appellate defender, argued the cause, and *Mary D. Prewitt*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the briefs for appellee.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

The opinion of the court was delivered by

MCFARLAND, C.J.: The case is before us on the State's petition for review challenging the Court of Appeals' reversal of Antonio C. Moore's jury trial conviction of robbery and remand of the case for sentencing on theft. (*State v. Moore*, 26 Kan. App. 2d 89, 978 P.2d 291 [1999].)

Robbery is the taking of property from the person or presence of another by force or by threat of bodily harm to any person (K.S.A. 21-3426). The Court of Appeals held there was insufficient evidence of "threat of bodily harm" to sustain the conviction. We disagree.

## FACTS

The testimony at trial is crucial to the resolution of the issue and must be set forth in considerable detail. This is particularly important where, as here, the Court of Appeals opinion mixes in the testimony from the preliminary examination, which was not before the jury.

Christie Brown and Chad Schieb were walking to Brown's car in a Wal-Mart parking lot between 7:30 and 8:00 p.m. on an August evening. The car was parked at the side of the store where there was "very little light." While not yet dark outside, it was becoming so. As Brown and Schieb approached Brown's car, they saw another car parked diagonally beside it with parking lights on. Brown said it looked a little suspicious, but she did not think anything of it. When Brown and Schieb were at the back of their car, defendant got out of the other car and met them at the trunk of their car. Defendant was about 5 feet from Brown. Brown testified about what happened next.

"Q. Okay. Did [defendant] say anything to you?
"A. Just, 'Give me your keys.'
"Q. Did you have them out in your hand?
"A. Yes.
"Q. Did you give him your keys?
"A. Yes. I did.
"Q. How'd you give him your keys?
"A. I just tossed them to him.
"Q. Why'd you do that, why did you give him your keys?
"A. Well, whenever someone asks for my things that I don't know, I'm going to give it to them if I feel threatened.
"Q. Did you feel threatened by him?
"A. Yes."

Defendant took Brown's keys, opened Brown's car, and took her car stereo. Defendant then returned to his car and the driver drove off. Two other men sat in defendant's car watching the incident, including the driver thereof.

When asked how she felt during the time she stood there and saw defendant take her things, Brown said, "Well, I felt threatened. I didn't like my stuff getting taken from me." When asked if she was scared, Brown replied affirmatively.

On cross-examination, Brown responded to the following series of questions:

"Q. Did anybody ever threaten you?
"A. No, they didn't.
"Q. Were there any weapons involved?
"A. Not that I seen.
"Q. Okay. Did anybody say, 'I've got a gun'?
"A. No.
"Q. Did anybody say, 'I've got a knife'?
"A. No.
"Q. Did anybody say, 'I'm going to kill you'?
"A.    No."

Chad Schieb, Brown's fiance, corroborated Brown's version of the events. Schieb said there were two other men in the defendant's car, one in the driver's seat and one in the backseat. Schieb looked at the driver during the incident but could not really see the man in the backseat because it was getting dark outside. Schieb said Brown tossed defendant the keys before Schieb could tell her not to. Schieb said he was upset and "mouth[ed] off" to defendant. Defendant did not respond, but the driver of the other car "was just shaking his head." Schieb thought there may have been a gun in the other car.

When asked about Christie Brown's demeanor during the incident, Schieb described her this way: "She was just shaking. She wasn't saying much, I guess, except, 'Chad, shut up.' . . . [Christie] was scared. Very scared." Brown was 18 years old when accosted.

In reversing the robbery conviction the Court of Appeals stated:

"Kansas has not defined what constitutes threat of bodily harm. Generally, actual fear need not be strictly proven; the law will presume fear if there are adequate indications of the victim's state of mind. 67 Am. Jur. 2d, Robbery § 24, p. 79. In *U.S. v. Mitchell*, 113 F.3d 1528 (10th Cir. 1997), the court held that there was sufficient evidence to prove robbery when Mitchell merely approached the teller's window and said, 'This is a holdup.' The court looked to three factors in making its decision: (1) whether the situation appeared dangerous; (2) whether defendant intended to intimidate; and (3) whether the victim's fear of death or injury was reasonable. 113 F.3d at 1531.

"There is no question that Moore intended to intimidate Brown to get her keys; however, there is a question as to whether there was a threat of bodily harm. . . .

"In *State v. Bateson*, 266 Kan. 238, 970 P.2d 1000 (1998), the Supreme Court held that it is not robbery when the thief gains peaceable possession of the property and uses no violence except when resisting arrest or escaping. Moore obtained possession of the car keys peaceably and without violence to Brown. There was no resistance by Brown. Under these circumstances, there is no basis for concluding that Moore took Brown's keys by force or by threat of bodily harm; therefore, we cannot affirm Moore's conviction for robbery, and the sentence for that conviction must be vacated. There was, however, sufficient evidence to support the lesser included offense of theft. Where a defendant has been convicted of the greater offense of robbery but the evidence supports only the lesser included offense of theft, the conviction for robbery should be vacated and the case remanded for defendant to be resentenced on the conviction of theft. See *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993). Moore's case is remanded to the district court for resentencing for the conviction of theft." 26 Kan. App. 2d at 91-92.

The instruction herein on robbery stated that the taking of property from Brown was by threat of bodily harm. Was the evidence on this element sufficient?

When the sufficiency of the evidence is challenged, the question is whether, after a review of all the evidence, viewed in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

From the trial transcript and closing argument, it would appear Brown continued to exhibit fright over the incident on the witness stand. The jury, of course, had the benefit of observing her demeanor in determining her credibility as a witness.

The function of weighing the evidence and passing on credibility of witnesses belongs to the jury, not to the appellate court. A verdict secured on substantial competent evidence will not be disturbed on appellate review. *State v. Borthwick*, 255 Kan. 899, 904-05, 880 P.2d 1261 (1994). Further, on appellate review, the credibility of the witnesses will not be passed upon, conflicting evidence will not be weighed, and all questions of credibility are resolved in favor of the State. *State v. Clemons*, 261 Kan. 66, 71, 929 P.2d 749 (1996).

In support of its reversal, the Court of Appeals cites *State v. Bateson*, 266 Kan. 238, 970 P.2d 1000 (1998). The case is easily

distinguished. In *Bateson*, the defendant obtained peaceable possession of the property while the owner was absent. The only force involved the defendant having possibly slammed a door in the victim's face after she caught him before he could leave her office and pursued him up the steps and out the ground floor door. Threat of bodily harm was not involved in *Bateson*, as it was a question of whether the subsequent door slamming transformed the theft into a robbery.

No cases precisely on point have been cited to us or found independently. By analogy, the following cases are of interest.

In *United States v. Mitchell*, 113 F.3d 1528 (10th Cir. 1997), *cert. denied* 522 U.S. 1063 (1998), a case relied on by the Court of Appeals here, the question was whether the evidence was sufficient to support a federal conviction of bank robbery by intimidation. Mitchell argued that the evidence only supported a conviction for the lesser crime of bank larceny, rather than bank robbery by intimidation, because the bank employee could not have been intimidated by his actions. Mitchell entered the bank and approached the teller's window. He said "this is a hold up" and "get back." 113 F.3d at 1530-31. Mitchell asserted that he did not have a weapon or claim to have a weapon, never yelled, never threatened the teller with injury, and never touched her at any time during the incident.

Judge Tacha, writing for the court, indicated that three factors are examined in determining if there was intimidation in the context of a bank robbery: (1) whether the situation appeared dangerous, (2) whether the defendant intended to intimidate, and (3) whether the bank personnel were reasonable in their fear of death or injury. 113 F.3d at 1531 (citing *United States v. Smith*, 10 F.3d 724, 729 [10th Cir. 1993], and *United States v. Slater*, 692 F.2d 107, 109 [10th Cir. 1982]). The Tenth Circuit affirmed the conviction.

*State v. Davis*, 227 Kan. 174, 605 P.2d 572 (1980), involved whether a starter pistol was a dangerous weapon sufficient for an aggravated robbery charge. We stated:

"Generally, the courts which hold starter pistols are dangerous or deadly weapons rely on a subjective analysis. Since robbery has always involved intimidation or

fear, the circumstances of the robbery, including the weapon, are examined from the victim's point of view. An object can be a dangerous weapon if intended by the user to convince the victim that it is a dangerous weapon and the victim reasonably believes it is a dangerous weapon. Our decision in *State v. Robertson*, 225 Kan. [572, 574, 592 P.2d 460 (1979)], reflects this subjective analysis. See also *State v. Prince*, 227 Kan. 137, 605 P.2d 563 (1980)." 227 Kan. at 176-77.

In *State v. Robertson*, 225 Kan. 572, 592 P.2d 460 (1979), defendant walked into a convenience store stating, "This is a robbery," and that he wanted the store's money. Simultaneously, he put his hand in his coat pocket and "pointed the coat pocket" toward the store employees, acting as if there were a gun in his coat pocket. 225 Kan. at 572-73. We stated:

"As his first point on the appeal, the defendant contends that the trial court erred in refusing to dismiss the charge of aggravated robbery on the basis that the evidence presented in the case was insufficient to establish that the defendant was armed with a dangerous weapon at the time of the robbery. In support of his position, the defendant points out that no one actually saw a gun or any other dangerous weapon, that the robber did not expressly inform the store employees that he was armed or had a gun, that no excessive bulge was observed in the robber's pocket prior to the time he put his hand into his pocket, and that no gun was ever recovered in the investigation. From these facts, the defendant argues that he should not have been charged with aggravated robbery.

"We have concluded that the question of whether the defendant was armed with a dangerous weapon at the time of the robbery was one of fact for the jury to determine. It was not necessary for the State to show that the robber actually exhibited the weapon to the victim in order to raise a jury question. The only requirement was that there be some substantial evidence which raised a reasonable inference that the defendant was armed. As this court pointed out in *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), the aggravated robbery statute (K.S.A. 21-3427) requires only that the robber be 'armed with' a dangerous weapon, not that the robber openly display the weapon to the victim. Here the victim, Larry Williams, testified that the actions of the defendant in the store led him to believe that the defendant had a pistol or some other type of weapon. The conduct of the defendant, coupled with his statements at the time, constituted circumstantial evidence that the defendant was armed with a firearm. The fact that the jury chose to find the defendant guilty of simple rather than aggravated robbery does not mean that the evidence was insufficient to support the original charge. It means only that the jury had a reasonable doubt as to whether the defendant was armed and, therefore, acquitted the defendant of the greater offense. We hold that the trial court did not err in submitting to the jury the charge of aggravated robbery." 225 Kan. at 574.

We conclude it is appropriate to examine the evidence from the victim's point of view. In so doing, the circumstances, including what the victim reasonably perceived as well as whether the defendant intended his conduct to intimidate or threaten the victim into giving up her property, should be considered. Analyzing the evidence, we find the defendant orchestrated a situation intended to intimidate the young woman into surrendering her car keys. The area of the parking lot was rather remote from the main areas of use. His car was backed diagonally toward the victim's car. He got out of the passenger's side and accosted the couple as they approached the rear of their own vehicle. He was a stranger to them and demanded the keys, presumably to take possession of the victim's car. The only other persons present were defendant's two associates, presumably ready to assist defendant if needed.

A reasonable person would not ordinarily surrender his or her car to a stranger under such circumstances unless he or she feels threatened or intimidated. Unfortunately, carjackings and muggings resulting in injury or death to the victim are not that uncommon. In fact, law enforcement officers often advise the public to give up their property when accosted in order to, hopefully, avoid injury. The victim's surrender of the keys was not a voluntary act. The Court of Appeals opinion herein leaves the impression there can legally be no threat of bodily harm sufficient to sustain a robbery conviction unless the "or else" is expressly verbalized. Under the totality of the circumstances herein, defendant did not have to add "or else I will hurt you" to his demand for the keys in order for the charge to be submitted to the jury, the finder of fact herein. The jury heard the evidence and found defendant had taken the victim's property by threat of bodily harm. That determination is supported by substantial competent evidence sufficient for a rational factfinder to have found defendant guilty beyond a reasonable doubt.

We note, also, that the defense in this case was primarily that defendant was not the perpetrator of the robbery. Illustrative thereof is the following excerpt from defendant's testimony on direct:

> "Q. Did you commit the crimes against Christie [Brown] and Chad [Schieb]
> on August 17th, 1995?
> "A. No.
> "Q. And were you with anybody on that day who did that?
> "A. No.
> "Q. Do you know who did that?
> "A. Yes.
> "Q. Are you related to them?
> "A. Yes.
> "Q. How?
> "A. They're my nephews and my cousin.
> "Q. Any of them look like you?
> "A. Yes.
> "Q. Which one?
> "A. Darrell.
> "Q. Describe him.
> "A. He look just like me."

In his testimony, defendant identified the nephews as Darrell and Darwin Bagley and the cousin as Jason Fisher. On cross-examination defendant stated that it was Darrell who had robbed Christie Brown.

It should also be noted that the only testimony by either victim as to his or her observations of defendant's race came in response to questions relative to their identification of defendant. Contrary to the inference in the dissent herein, there is no testimony or other evidence that defendant's race had any bearing on Brown's fear of the consequences should she not relinquish her keys.

The judgment of the Court of Appeals reversing the conviction is reversed, and the judgment of the District Court is affirmed.

ALLEGRUCCI, J., dissenting: I respectfully dissent from the majority's holding that there was sufficient competent evidence to support the defendant's conviction of robbery. I specifically reject the majority's rationale that the focus is the victim's point of view.

The majority ignores the language of K.S.A. 21-3426, which requires the taking of property from another to be "by force or by threat of bodily harm to any person." The majority focuses on the victim's subjective reaction rather than the defendant's conduct.

In so doing, the majority transforms the request by the defendant—"Give me your keys"—into a threat of bodily harm.

I find it interesting that the majority finds no case "precisely on point" but relies on cases that clearly are distinguishable from the present case. *U.S. v. Mitchell*, 113 F.3d 1528 (10th Cir. 1997), *cert. denied* 522 U.S. 1063 (1998), is a federal case construing the federal offense of bank robbery by intimidation in violation of 18 U.S.C. § 2113(a) (1994). The court stated that the issue was "whether the evidence is sufficient to support a finding of intimidation in the context of a bank robbery." 113 F.3d at 1531. Intimidation is not an element of the offense of robbery under K.S.A. 21-3426. Both the offense and setting are different than those in the present case. Mitchell approached the bank teller, who was alone in the bank, and said, "this is a holdup" and "get back." 113 F.3d at 1531. The court concluded that

"Mitchell's conduct was 'aggressive behavior which very well could have been considered as intimidating by the jury.' *Slater*, 692 F.2d at 109. Ms. Muller testified that Mitchell's tone was serious and that she felt threatened by his actions. After Mitchell took the money, he instructed Ms. Muller to go with him. Ms. Muller complied. As they walked toward the back door of the bank, Mitchell 'yanked' the phone out of the wall. Once outside, Mitchell ordered Ms. Muller to go back into the bank. She again complied. Ms. Muller testified that because she thought Mitchell might come back inside, she locked the back door and left through the front of the bank to call the police. Under these circumstances, there was ample evidence supporting the element of intimidation." 113 F.3d at 1531.

*State v. Davis*, 227 Kan. 174, 605 P.2d 572 (1980), and *State v. Robertson*, 225 Kan. 572, 592 P.2d 460 (1979), are aggravated robbery cases and dealt with sufficiency of evidence as to whether the defendant was armed. Both involved robbery of a convenience store. Neither case is on point.

*Goodwine v. State*, 764 P.2d 680 (Wyo. 1988), is on point. Goodwine suffered from a severe neurological deficiency which affected his speech and gait. He entered the lobby of a motel and became aggravated when the clerk could not understand him. He proceeded to get louder and more agitated. He put his hand in his pocket, and the clerk thought he had a gun. He walked around the counter, and the clerk became very frightened that he was going

to take the cash from the cash register. She ran to the back room and locked the door. She called the police, then peeked out the door and observed Goodwine taking cash out of the cash register. Under Wyoming robbery statutes, there must be a theft where defendant "threatens another with or intentionally puts him in fear of immediate bodily injury." 764 P.2d at 682. The Wyoming Supreme Court reversed the robbery conviction, stating:

"The unique feature of robbery is the victim's relinquishing property in the face of the immediate possibility of the actor's execution of the threat to do bodily harm. The language used, 'threatens' and 'intentionally puts in fear,' contemplates purposeful behavior and focuses upon the accused's purposeful conduct in conveying, by either express verbal threats or implicit nonverbal physical movement or both, that harm will immediately result if the victim resists the taking. From this reasoning, we see that it is the accused's conduct in communicating, either verbally or with physical movement or both, the threat of injury that controls, *not* the victim's reaction to the accused's conduct. Our focus on the accused's purposeful behavior assures that the robbery offense properly identifies those offenders who pose the risk of bodily harm to which the crime is addressed. If our focus were on the victim's reaction to an accused's conduct, we would run the risk that a victim's subjective overreaction to benign conduct would unjustifiably escalate an offense from a less serious to a more serious crime.

"Focusing on the accused's purposeful behavior, the court in *Mangerich v. State*, 93 Nev. 683, 572 P.2d 542 (1977), upheld the accused's robbery conviction where the accused entered a 7-11 store, said 'good morning' to the female sales clerk, placed a ski mask over his head and told the clerk, '[g]ive me all the money.' The court explained, 572 P.2d at 543:

'Of course, "[t]he courageousness or timidity of the victim is irrelevant; it is the acts of the accused which constitute an intimidation." *United States v. Alsop*, 479 F.2d 65, 67 (9th Cir. 1973). The standard is objective. "If the fact attended with circumstances of terror, such threatening word or gesture as in common experience is likely to create an apprehension of danger and induce [another] to part with his property for the safety of his person, it is robbery." *Hayden v. State*, 91 Nev. 474, 476, 538 P.2d 583, 584 (1975). Certainly, the appearance of a strange man in a ski mask demanding money could cause a reasonable clerk to fear for her safety and relinquish property. *Cf. United States v. Robinson*, 527 F.2d 1170 (6th Cir. 1975); *State v. Stephens*, 66 Ariz. 219, 186 P.2d 346 (1947); and *Flagler v. State*, 198 So. 2d 313 (1967).'

. . . .

"As pointed out in *United States v. Alsop*, 479 F.2d 65, 67 (9th Cir. 1973), if the focus were on the victim's reaction and not on the accused's conduct, 'a fearless banker could never be robbed by intimidation.' Conversely, a timid banker could always be robbed under a benign or ordinary circumstance." 764 P.2d at 682-83.

In *Parnell v. State*, 389 P.2d 370 (Okla. Crim. 1964), the victim was an 84-year-old woman. The defendant agreed to do certain repairs on her home for $25. After the work was done, the defendant and another man presented the victim with a bill for $600. The victim protested and finally gave them $300. She testified she did so because she was so frightened. She was between the two men who were demanding a shocking amount of money. She was afraid and knew their demand meant something bad because they had promised to do it for $25. In reversing the robbery conviction, the court said:

"While we believe that Mrs. Cora McDonald was in a state of shock and fear after the accused, Rex Parnell, made demand upon her for the sum of $600.00 (a sum grossly in excess of the sum agreed upon), we do not believe that the mere request of a larger amount than was actually due defendant, unaccompanied by some act, gesture, deed or word, threatening unlawful injury, either to the person of Mrs. Cora McDonald or her property, is sufficient to constitute that degree of coercion or intimidation required under our statutes. For as was stated in *Davis v. Commonwealth*, Ky., 54 S.W. 959; Syllabus #1:

'Where a person parts with money upon a mere demand made in a rough, positive voice, with an oath, the taking is not robbery; the menace not being such as to excite reasonable apprehension of danger.'

. . . .

"It can thus be seen that some act, word, gesture or deed calculated to produce fear or injury to property or person must be established by competent evidence. And it must further appear that as a result of said act, word, gesture or deed the victim was in such a state of fear that he parted with his property.

"For as was stated in *United States v. Baker*, D.C., 129 F. Supp. 684:

'Intimidation in the law of robbery means putting in fear, and the fear must arise from the conduct of the accused rather than the mere temperamental timidity of the victim. The fear need not be so great as to result in great terror, panic, or hysteria.'" 389 P.2d at 374-75.

Here, defendant asked Brown for the keys in a normal voice. He did not threaten her or raise his voice. They were in a public parking area. It was not yet dark, and she was with her boyfriend. Brown testified the defendant was black and had an "afro" hair style. He was not a big man, only a couple of inches taller than her 5-feet 4-inch height, and he weighed approximately 145 lbs. Brown's boyfriend was 5 feet 10 inches tall and weighed 205 lbs. He testified that the two men in the car were also black. He was not frightened

and the whole thing "just [made] me mad." He stated that he had mouthed off to the defendant. The only response from defendant was, "You're just messing with me because I'm a nigger."

Brown had made up her mind that if a stranger ever asked her for something, she would give it to him if she felt threatened. She obviously was scared, frightened, and intimidated simply by the defendant's presence. She decided to give up the keys because she did not want "any kind of a problem." She did not have to ignore the defendant's request to determine if her fear was warranted. However, her decision did not convert a theft into a robbery. It was the defendant's conduct that controls, not Brown's reaction to the conduct. There was no express verbal threat or nonverbal physical movement by the defendant that could reasonably be construed as a threat of bodily harm. The test is objective and focuses on the conduct of the defendant. Was the conduct of the defendant such that in common experience would constitute a threat of bodily harm and would reasonably induce Brown to part with her car keys? As stated by the Court of Appeals, the question is whether being scared and feeling threatened rises to the level of reasonable fear of death or injury. In my view, it did not.

Citing no authority, the majority concludes that it is appropriate to examine the evidence from the victim's point of view. The majority then proceeds to focus on the subjective view of a timid 18-year-old victim and all but ignores the conduct of the defendant or whether Brown's perception that the defendant threatened her with immediate bodily harm was a reasonable one. The Court of Appeals reversed the robbery conviction, holding that "there is no basis for concluding that Moore took Brown's keys by force or by threat of bodily harm." 26 Kan. App. 2d at 91-92. I would affirm the Court of Appeals.

Six, J., joins in the foregoing dissent.