265 P.3d 235 (2011)
2011 WY 158
Danny Arnold RODGERS, Appellant (Defendant),
v.
The STATE of Wyoming, Appellee (Plaintiff).
No. S-11-0044.
Supreme Court of Wyoming.
November 18, 2011.
*237 Representing Appellant: Diane Lozano, State Public Defender; Tina N. Olson, Appellant Counsel; Eric M. Alden, Senior Assistant Appellate Counsel; Wyoming Public Defender Program. Argument by Mr. Alden.
Representing Appellee: Gregory A. Phillips, Wyoming Attorney General; Terry Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.
Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.
GOLDEN, Justice.
[¶ 1] Appellant Danny Arnold Rodgers was convicted of check fraud, driving while intoxicated, felony identity theft, and two counts of forgery. He appeals those convictions raising, among other things, claims of evidentiary insufficiency and a speedy trial violation under W.R.Cr.P. 48(b). We will affirm in part, reverse in part, and remand for further proceedings.

ISSUES
[¶ 2] Rodgers presents these issues with respect to his conviction for check fraud:
I. Does the Information state facts constituting the offense?
II. Does the instrument involved constitute a "check" as defined in § 6-3-701(a)?
III. Was sufficient proof presented that the check was not paid for insufficient funds?
IV. The document given to the jury as the "Information" was not the actual Information which it was considering.
Additionally, Rodgers posits this issue with respect to his identity theft conviction:
Does sufficient evidence support finding an economic benefit over $1,000?
Lastly, Rodgers raises the issue of whether he was denied his right to a speedy trial under W.R.Cr.P. 48(b).

*238 FACTS
[¶ 3] The basic facts underlying Rodgers' convictions are largely undisputed. On the night of July 8, 2008, Rodgers entered a convenience store in Wheatland, Wyoming. He asked the clerk for an EFS Transcheck, which is a negotiable instrument in the name of a private company, EFS Transportation Services, payable through the Regions Bank in Memphis, Tennessee. As in the case of a typical check, an EFS check contains the name of the payee, the amount to be paid, and the date. Unlike a typical check, however, an EFS check requires a valid transaction number, an issuer number, and an authorization number. The intended payee, as dictated on the face of the EFS check, is responsible for obtaining and/or verifying the authorization number as a precondition to accepting the check.
[¶ 4] As requested, the clerk provided Rodgers with a blank check. Rodgers then initiated a phone call using the store's phone. The clerk assumed he called EFS for the necessary numbers. Rodgers began filling out the check, with the clerk standing across the counter from him. When his pen suddenly ran out of ink, the clerk took over and wrote in the numbers on the check as Rodgers relayed what was seemingly being provided to him over the phone.[1] Once the check was complete, Rodgers hung up the phone, and the clerk gave him $300.00 in exchange for the check.
[¶ 5] Rather than leaving the store after receiving the cash, Rodgers lingered to chat with the clerk and her 16-year-old daughter. After ostensibly having a brief conversation on his cell phone, Rodgers told the clerk that he needed another EFS check. By this time, the clerk had become suspicious of Rodgers and informed him that she would call EFS for the authorization number. She also told Rodgers of her intention to verify the validity of the first check. Rodgers then left the store. After learning that the $300.00 EFS check was not authorized, the clerk contacted the police.
[¶ 6] The Chief of the Wheatland Police Department responded to the call. He interviewed the clerk, collected the EFS check as evidence, and patrolled around Wheatland looking for Rodgers. A short time later, Trooper Shawn Stroud of the Wyoming Highway Patrol spotted Rodgers' vehicle on a highway seven miles south of Wheatland and initiated contact with him. Rodgers identified himself as Earl Hood and handed the trooper a temporary driver's license bearing the name of Earl Robert Hood, with Hood's corresponding birth date and Texas driver's license number, which had been issued to Rodgers by the Deadwood Police Department in South Dakota the previous day following an arrest for driving while intoxicated. During the course of their contact, Trooper Stroud suspected that Rodgers was intoxicated and, after Rodgers failed field sobriety tests, the trooper arrested him for driving while under the influence of alcohol ("DUI"). A subsequent breathalyzer test revealed a blood-alcohol content of twice the legal limit.
[¶ 7] Prior to Rodgers' arrest, the Chief of Police arrived at the scene and spoke with Rodgers. The chief informed Rodgers that he was investigating "a fraudulent check situation." In response, Rodgers handed the Chief $300.00, stating he "wanted to return to the truck stop and give the money back so this would go away." At the time, Rodgers did not claim that anyone was mistaken about the validity of the EFS check.
[¶ 8] Based on the information available to it, the State charged Rodgers under the name of "Earl Hood" with the misdemeanor offenses of DUI and check fraud. At his initial appearance in circuit court, the magistrate twice advised Rodgers of the charges against him and the associated maximum fines and penalties. Rodgers thereafter entered pleas of guilty to both charges. The magistrate accepted Rodgers' guilty plea on the DUI charge, but declined to accept the guilty plea regarding the check fraud charge because Rodgers failed to provide an adequate factual basis to support that plea.
*239 [¶ 9] The magistrate imposed a 60-day jail sentence on the DUI charge, which he suspended in favor of six months of unsupervised probation, a fine of $750.00, with $350.00 conditionally suspended on his successful completion of probation, and a crime victims' surcharge and court costs in the amount of $180.00. As to the check fraud charge, the magistrate advised Rodgers of the potential $750.00 fine, as well as the possibility of $180.00 in court costs and crime victims' compensation, and allowed Rodgers to be released on his own recognizance under specified terms and conditions, including that he have his attorney file an entry of appearance within 21 days. The magistrate deferred setting a trial date on the check fraud charge pending the filing of counsel's entry of appearance.
[¶ 10] After signing the necessary court documents as Earl Hood and being released from jail, Rodgers left the State of Wyoming. The circuit court eventually issued an arrest warrant for Rodgers' failure to pay the DUI fine and to adhere to the requirements of his release on the check fraud charge. Rodgers was later arrested in Louisiana and, in May 2009, he waived extradition to Wyoming.
[¶ 11] In the meantime, the real Earl Robert Hood contacted the Wyoming Highway Patrol trying to determine why his CDL license was marred by a Wyoming DUI conviction. Trooper Stroud then began investigating Rodgers' true identity by comparing fingerprints, photographs, and records from the FBI and various state entities. He discovered that South Dakota officials were also seeking to uncover Rodgers' true identity, and that Rodgers had used a variety of aliases in Georgia, Kentucky, and Louisiana.
[¶ 12] As a result of the trooper's investigation, the State dismissed the pending check fraud charge and had the DUI conviction entered against Earl Hood vacated. It then recharged Rodgers with those crimes according to his real name. In addition to the misdemeanor check fraud and DUI charges, the State charged Rodgers with felony identity theft, alleging that he used the identity of Earl Robert Hood to avoid prosecution on the two earlier misdemeanor charges and "in doing so attempted to gain an economic benefit of more than $1,000.00 by avoiding the fines associated with the misdemeanors." The State also charged him with two counts of forgery, both felonies, for signing the name of Earl Hood on the earlier court documents. At his arraignment on October 14, 2009, Rodgers entered pleas of not guilty to the charges. The district court set trial for April 12, 2010.
[¶ 13] Five days before the scheduled trial, defense counsel moved to have the proceedings suspended pending a mental evaluation of Rodgers. The State did not object, and the district court granted the motion. The evaluation, filed in the district court on May 13, 2010, found Rodgers competent to stand trial. The district court subsequently set a trial date of August 18, 2010.
[¶ 14] The case proceeded to trial as scheduled. Rodgers testified on his own behalf and conceded his guilt on the DUI charge. However, he disputed the validity of the other charges, defending on the basis of mistake and a claim that he had legally changed his name to Earl Robert Hood. Ultimately, the jury found Rodgers guilty on all five charged offenses. The district court sentenced Rodgers to consecutive six-month terms on the two misdemeanor counts, with 180 days of presentencing confinement credit applied against each sentence. As to the felony convictions, the district court imposed concurrent nine-to-ten-year prison terms, to be served consecutively to the misdemeanor sentences, and applied 221 days of presentencing credit to these sentences. This appeal followed.

DISCUSSION

Check Fraud Conviction
[¶ 15] Rodgers challenges the propriety of his conviction for check fraud on essentially three grounds: the Information did not properly allege the crime; the State did not sufficiently prove all the elements of the crime; and the district court reversibly erred by providing the jurors with a copy of an Information that did not correctly reflect the elements of the charged crime. We need not address the merits of Rodgers' various complaints because we agree that insufficient *240 proof exists establishing every element of the crime.
[¶ 16] The benchmark for reviewing a sufficiency of the evidence claim is whether the evidence, when viewed in the light most favorable to the State, is adequate to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. Dettloff v. State, 2007 WY 29, ¶ 23, 152 P.3d 376, 383 (Wyo.2007); Statezny v. State, 2001 WY 22, ¶ 15, 18 P.3d 641, 645 (Wyo.2001). We will not substitute our judgment for that of the jury. Instead, our duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have found that the essential elements of the crime were proven beyond a reasonable doubt. Pryor v. State, 2009 WY 95, ¶ 7, 212 P.3d 635, 637 (Wyo.2009); Conine v. State, 2008 WY 146, ¶ 5, 197 P.3d 156, 159 (Wyo.2008). We review questions of law, however, de novo. Dougherty v. State, 2010 WY 116, ¶ 4, 237 P.3d 403, 404 (Wyo.2010).
[¶ 17] Rodgers was convicted of a violation of Wyo. Stat. Ann. § 6-3-702(a) (LexisNexis 2011), which states: "Any person who knowingly issues a check which is not paid because the drawer has insufficient funds or credit with the drawee has issued a fraudulent check and commits fraud by check." At trial, and in accordance with the statute, the district court instructed the jury that it should not convict Rodgers unless it found the State had proven the following elements beyond a reasonable doubt:
1. On or about the 8th day of July, 2008
2. In Platte County, Wyoming
3. The Defendant, Danny Arnold Rodgers
4. Knowingly issued
5. A check in the amount of less than $1,000.00
6. Which check was not paid because the drawer of the check had insufficient funds or credit with the drawee.
[¶ 18] The most fundamental problem with Rodgers' check fraud conviction is that, as a matter of law, Element 5 is not met under the facts of this case. The EFS check is not a "check" as defined by Wyo. Stat. Ann. § 6-3-701(a)(i) (LexisNexis 2011). This statute defines a "check" as "a written unconditional order to pay a sum certain in money drawn on a bank, payable on demand and signed by the drawer." The EFS check clearly states on its face "DO NOT CASH WITHOUT CALLING." It further states: "This check is not valid and will not be honored without obtaining an authorization number before cashing. To obtain an authorization number [contact EFS]. ... If this check already has an authorization number, please call and verify the number." Given this language, it is clear that the EFS check is not an "unconditional order to pay."
[¶ 19] Additionally, there is a total lack of proof supporting Element 6. Rodgers' criminal culpability was based on the fact that he was the "drawer" of the check. A "drawer" is defined as "a person either real or fictitious whose name appears on a check as the primary obligor whether the actual signature is that of himself or of a person authorized to draw the check in his behalf." § 6-3-701(a)(iv). Rodgers' name does not appear on the EFS check as the primary obligor. Rather, that distinction belongs to EFS Transportation Services.
[¶ 20] Although we find there are other problems with the propriety of this conviction, we need not go further. While we do not question that a crime was committed by Rodgers, the facts simply do not support a conviction for check fraud as defined by Wyoming law. Accordingly, we reverse Rodgers' check fraud conviction.

Identity Theft Conviction
[¶ 21] Rodgers next challenges the validity of his conviction for felony identity theft under Wyo. Stat. Ann. § 6-3-901 (LexisNexis 2011). The statute defines identity theft generally as:
(a) Every person who willfully obtains personal identifying information of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services or medical information in the name of the other person without the consent of that person is guilty of theft of identity.
*241 The statute then classifies the grade of the crime between misdemeanor and felony as follows:
(c) Theft of identity is:
(i) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if no economic benefit was gained or was attempted to be gained, or if an economic benefit of less than one thousand dollars ($1,000.00) was gained or was attempted to be gained by the defendant; or
(ii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if an economic benefit of one thousand dollars ($1,000.00) or more was gained or was attempted to be gained by the defendant.
[¶ 22] In attacking his conviction, Rodgers does not dispute that he committed the crime of identity theft. Rather, his complaint concerns the felony grading of his criminal conduct. Rodgers' challenge is three-fold. First, he contends that his successful intent to avoid criminal fines in the first criminal case did not constitute an "economic benefit" for purposes of the grading provisions of § 6-3-901(c). Second, Rodgers contends the State improperly aggregated the economic benefits of two separate acts of identity theft to reach the felony threshold amount of $1,000.00. Lastly, he claims the State presented insufficient evidence to support the jury's finding of an economic benefit in the felony amount of $1,000.00 or more.
[¶ 23] Our resolution of this issue requires that we construe the pertinent statutory phrase "economic benefit ... was gained or was attempted to be gained." § 6-3-901(c). We review questions of statutory interpretation de novo. Dougherty, ¶ 4, 237 P.3d at 404. When interpreting a statute, we are guided by these principles:
We endeavor to interpret statutes in accordance with the legislature's intent. State Department of Revenue and Taxation v. Pacificorp, 872 P.2d 1163, 1166 (Wyo.1994). We begin by making an "`inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.'" Parker Land and Cattle Company v. Wyoming Game and Fish Commission, 845 P.2d 1040, 1042 (Wyo.1993) (quoting Rasmussen v. Baker, 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia. 845 P.2d at 1042.
When the words used are clear and unambiguous, that language establishes the rule of law. A statute is ambiguous only where its meaning is vague or ambiguous and subject to varying interpretations. Only if the wording is ambiguous or unclear to the point of demonstrating obscurity with respect to the legislative purpose or mandate do we resort to additional construction.

Rivera v. State, 846 P.2d 1, 6 (Wyo.1993) (citations omitted). Penal statutes must be strictly construed and "cannot be enlarged by implication or extended by inference or construction." Smith v. State, 902 P.2d 1271, 1284 (Wyo.1995).
Solis v. State, 2010 WY 165, ¶ 7, 245 P.3d 323, 325 (Wyo.2010) (quoting Hampton v. State, 2006 WY 103, ¶ 7, 141 P.3d 101, 104 (Wyo.2006); Meerscheidt v. State, 931 P.2d 220, 223-24 (Wyo.1997)).
[¶ 24] "Gain" is defined as "[t]he act of acquiring something." Webster's II New College Dictionary 466 (3rd ed. 2005). The term "economic" is commonly understood as relating to the "management of material wealth" or "matters of finance." Id. at 364. A "benefit" is defined as "[s]omething promoting or enhancing well-being: ADVANTAGE." Id. at 105. Thus, giving effect to the ordinary meaning of these words, the felony provision of § 6-3-901(c)(ii) applies in situations where the defendant has acquired or attempted to acquire a financial advantage or an enhancement of his financial position in the amount of $1,000.00 or more.
[¶ 25] Considering the statute's plain language, we fail to see how this case falls within the reach of § 6-3-901(c)(ii). Rodgers' *242 felony conviction is based on the notion that he used Hood's identity in an effort to avoid the monetary penalties associated with the initial DUI and check fraud charges. However, we do not believe the avoidance of a potential financial obligation is tantamount to the acquisition of a financial advantage. In the former situation, the individual is essentially seeking to avert a financial loss in order to maintain his financial status quo; whereas in the latter situation, the individual is seeking to enhance his wealth or financial position. We find nothing in this case to support a conclusion that Rodgers sought to enhance his financial well-being in the initial criminal case. Consequently, Rodgers' conviction for felony identity theft cannot stand.
[¶ 26] Although we are reversing Rodgers' felony conviction, it has long been recognized that this Court has the authority to order that the defendant be resentenced on the lesser-included offense if the jury verdict supports a conviction for that offense. Kelly v. State, 2007 WY 45, ¶ 24, 153 P.3d 926, 931 (Wyo.2007); Goodwine v. State, 764 P.2d 680, 684 (Wyo.1988); Simonds v. State, 762 P.2d 1189, 1193 (Wyo.1988). Here, no question exists that the jury's verdict also supports a conviction on the lesser offense of misdemeanor identity theft. Accordingly, we set aside Rodgers' felony conviction, order entry of a misdemeanor identity theft conviction, and remand to the district court for resentencing on the misdemeanor conviction.

Speedy Trial
[¶ 27] A criminal defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Wyo. Const. art. 1, § 10. This Court adopted W.R.Cr.P. 48(b) as a procedural mechanism for enforcing this constitutional right. Almada v. State, 994 P.2d 299, 304 (Wyo.1999). Speedy trial violations may be alleged as substantive constitutional violations or as procedural violations of W.R.Cr.P. 48(b). See, for example, Boucher v. State, 2011 WY 2, ¶¶ 7-20, 245 P.3d 342, 348-52 (Wyo.2011) (constitutional violation); Humphrey v. State, 2008 WY 67, ¶¶ 19-31, 185 P.3d 1236, 1243-46 (Wyo.2008) (constitutional and rule violation); Vlahos v. State, 2003 WY 103, ¶¶ 12-24, 75 P.3d 628, 632-35 (Wyo.2003) (rule violation); Hauck v. State, 2001 WY 119, ¶¶ 12-15, 36 P.3d 597, 600-01 (Wyo.2001) (constitutional and rule violation). In the instant case, Rodgers has not alleged a substantive constitutional violation but, rather, has limited his speedy trial claim to a violation of W.R.Cr.P 48(b). Our review of Rodgers' speedy trial claim is de novo. State v. Newman, 2004 WY 41, ¶ 7, 88 P.3d 445, 447 (Wyo.2004).
[¶ 28] Rule 48(b) states in pertinent part:
(b) Speedy trial. 
(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.
(2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.
* * * *
(4) Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:
(A) On motion of defendant supported by affidavit; or
(B) On motion of the attorney for the state or the court if:
(i) The defendant expressly consents;
(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or
(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and
(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.
(5) Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.
W.R.Cr.P. 48(b).
[¶ 29] There is no question in this case that Rodgers' trial was not held within 180 days of his arraignment. As noted above, Rodgers' arraignment occurred on October *243 14, 2009, and his trial commenced on August 18, 2010  308 days after his arraignment. The issue before us is whether the trial was properly continued beyond the express 180-day mandate of W.R.Cr.P. 48(b). We conclude that it was.
[¶ 30] The record reveals that the district court initially set Rodgers' trial in compliance with, but directly on the 180-day limit of Rule 48(b). Five days before the scheduled trial date, and 175 days after arraignment, the district court continued that trial setting to accommodate defense counsel's request for an evaluation of Rodgers' mental competency to proceed. Because Rodgers' mental competency to stand trial was at issue, Wyoming law, as well as the due process protections of the United States and Wyoming constitutions, required the district court to suspend the criminal proceeding pending a determination that Rodgers was, indeed, competent to stand trial. Hauck, ¶ 14, 36 P.3d at 601; Wyo. Stat. Ann. § 7-11-303 (LexisNexis 2011). Once the district court postponed the original trial date, it would have been a practical impossibility for Rodgers' trial to be held within the five days remaining on the 180-day speedy trial clock of Rule 48(b)  witnesses had to be subpoenaed, a new jury panel had to be summoned, and time had to be afforded for Rodgers to contest the forensic evaluation findings and for the district court to make a final determination concerning Rodgers' fitness to proceed. In our view, Rule 48(b) anticipates such a situation. It allows for a continuance of the 180-day limit if required for the due administration of justice and there is no resulting prejudice to the defendant. W.R.Cr.P. 48(b)(4)(B)(iii). Here, we are unable to find, and we are not directed to any, prejudice flowing from the continuance. Thus, under the facts of this case, the continuance of Rodgers' trial was in compliance with Rule 48(b). Rodgers' argument that his speedy trial right was violated because of a failure to comply with Rule 48(b) fails.

CONCLUSION
[¶ 31] We hold Rodgers' right to a speedy trial under W.R.Cr.P. 48(b) was not violated under the facts of this case. We also hold there is insufficient evidence to support his convictions for check fraud and felony identity theft, and reverse these convictions. However, we find that the jury's verdict supports Rodgers' conviction for the lesser-included offense of misdemeanor identity theft. We therefore order entry of a conviction on the crime of misdemeanor identity theft and remand to the district court for resentencing on that conviction. Finally, we affirm in all respects Rodgers' convictions for DUI and forgery.
NOTES
[1] Although the clerk knew that she should have personally contacted EFS for the authorization number, she accepted the information Rodgers provided to her.